[This opinion has been published in *Ohio Official Reports* at 85 Ohio St.3d 298.]

JOHNSON, APPELLEE AND CROSS-APPELLANT, *v.* BP CHEMICALS, INC.,

APPELLANT AND CROSS-APPELLEE.

[Cite as *Johnson v. BP Chemicals, Inc*., 1999-Ohio-267.]

*Employer and employee—Cause of action brought by employee alleging intentional tort by employer in workplace—R.C. 2745.01 is unconstitutional in its entirety—Cross-appeal dismissed as improvidently allowed.*

R.C. 2745.01 is unconstitutional in its entirety.  (*Brady v. Safety-Kleen Corp.* [1991], 61 Ohio St.3d 624, 576 N.E.2d 722, approved and followed.)

(No. 97-2723—Submitted December 15, 1998—Decided April 14, 1999.)

APPEAL and CROSS-APPEAL from the Court of Appeals for Allen County, No. 1-97-32.

————————————

{¶ 1} On January 17, 1997, Norman A. Johnson, appellee and cross-appellant, filed a complaint in the Court of Common Pleas of Allen County, naming as defendant BP Chemicals, Inc. ("BP"), appellant and cross-appellee herein.  In the complaint, Johnson alleged that during the course of his employment with BP, he "suffered burn injuries to his lower extremities, face, right arm, and other parts of his body," and that his injuries were a direct and proximate result of BP's "intentionally tortious conduct."  Johnson also sought recovery against BP for products liability.  Johnson's products liability claims were predicated on the allegation that BP acted "in its dual capacity as the manufacturer of machinery on which Plaintiff sustained injury at the premises."

{¶ 2} With respect to his intentional tort claim, Johnson alleged initially that R.C. 2745.01, the "employment intentional tort" statute, was unconstitutional.

With this assertion as a backdrop, Johnson then based his common-law intentional tort claim upon the following allegations[1]:

"(1) Defendant knew of the existence of the dangerousness of a procedure or condition at the premises which arose in the cleaning of prilling tower spray heads (hereinafter 'product') with steam pressure within its business operation;

"(2) From past experience, Defendant knew that since critical welds had failed in the product and since inspection of the product for such foreseeable failures was knowingly inadequate, bodily injury would occur;

"(3) Defendant knew that if Plaintiff was subjected by his employment as the prill B operator with Defendant to such dangerous procedure or condition, harm to Plaintiff would be a substantial certainty and not just a high risk; and

"(4) Under such circumstances and with such knowledge, Defendant acted to require Plaintiff to continue to perform the dangerous task, to wit, cleaning the product with steam pressure."

{¶ 3} On February 24, 1997, BP filed a Civ.R. 12(B)(6) motion to dismiss the complaint. In its memorandum in support of the motion, BP argued that R.C. 2745.01 was a valid exercise of the General Assembly's police powers and that Johnson's intentional tort claim should be dismissed because he failed to allege facts sufficient to establish the existence of an intentional tort in accordance with the statutory standards set forth in R.C. 2745.01. BP also asserted that Johnson's products liability claims were barred under Ohio law.

{¶ 4} Johnson responded to BP's motion to dismiss, and he also filed two motions for partial summary judgment. In his first motion for summary judgment, Johnson reasserted that R.C. 2745.01 was unconstitutional. In his second motion,

---

1. In addition to his common-law intentional tort claim, Johnson, in the alternative, also alleged in his complaint that "as the employer of Plaintiff, Defendant is liable to Plaintiff under the provisions of Section 2745.01, Ohio Revised Code."

Johnson set forth reasons why he should be able to proceed with his products liability claims against BP.

{¶ 5} On April 28, 1997, the trial court granted BP's motion to dismiss and denied Johnson's summary judgment motions. The court concluded that R.C. 2745.01 was constitutional in all respects, that R.C. 2745.01 superseded common-law intentional tort claims brought by employees against their employers, and that, in this case, specific facts were not alleged sufficient to establish that BP "deliberately and intentionally" injured Johnson. The trial court further determined that Johnson failed to state a viable claim for products liability under the dual capacity doctrine.

{¶ 6} On appeal, the Third District Court of Appeals reversed the judgment of the trial court in part and affirmed it in part, and remanded the cause for further proceedings. The court of appeals held that R.C. 2745.01 was unconstitutional and that Johnson had properly set forth a claim for common-law intentional tort sufficient to survive a Civ.R. 12(B)(6) motion to dismiss. The court of appeals, however, agreed with the trial court that Johnson could not maintain a products liability action. Based on the holdings of the court of appeals, BP filed an appeal and Johnson filed a cross-appeal.

{¶ 7} The cause is now before this court upon the allowance of a discretionary appeal and cross-appeal.

———————————

*Ray & Alton, L.L.P.,* and *Frank A. Ray; Janice A. Quatman & Associates* and *Janice A. Quatman*, for appellee and cross-appellant.

*Thompson, Hine & Flory, L.L.P., William C. Wilkinson, Scott A. King* and *Christine M. Haaker*, for appellant and cross-appellee.

*Manley, Burke, Lipton & Cook* and *Andrew S. Lipton*, in support of appellee and cross-appellant, for *amicus curiae*, Ohio Academy of Trial Lawyers.

*Stewart Jaffy & Associates Co., L.P.A.*, *Stewart R. Jaffy* and *Marc J. Jaffy*, in support of appellee and cross-appellant, for *amicus curiae*, Ohio AFL-CIO.

*Jones, Day, Reavis & Pogue, Jeffery D. Ubersax* and *Dennis A. Devine*, in support of appellant, for *amicus curiae*, Cold Metal Products, Inc.

*Betty D. Montgomery*, Attorney General, *Arthur J. Marziale, Jr.*, and *Kimberly L. Charles*, Assistant Attorneys General, in support of appellant, for *amicus curiae*, Ohio Attorney General.

*Vorys, Sater, Seymour & Pease, L.L.P.*, *Robert A. Minor* and *Robin R. Obetz*, in support of appellant and cross-appellee, for *amici curiae*, Ohio Manufacturers' Association and Ohio Self-Insurers' Association.

*Garvin & Hickey, L.L.C.*, and *Preston J. Garvin*, in support of appellant and cross-appellee, for *amicus curiae*, Ohio Chamber of Commerce.

*Bricker & Eckler, L.L.P.*, *Charles D. Smith* and *Bobbie S. Sprader*, in support of appellant, for *amici curiae*, Ohio Farm Bureau and National Federation of Independent Business, Ohio Chapter.

———————————

**D<small>OUGLAS</small>, J.**

{¶ 8} The central question for our consideration is whether the court of appeals erred in concluding that R.C. 2745.01 is unconstitutional. Johnson has also filed a cross-appeal, contending that the trial court and court of appeals erred in dismissing his products liability claims.

I

R.C. 2745.01

{¶ 9} R.C. 2745.01 became effective November 1, 1995. See Am.H.B. No. 103, 146 Ohio Laws, Part I, 756, 760.[2] This legislation represents yet another

---

2. Section 1, Am.H.B. No. 103, 146 Ohio Laws, Part I, 756-757, states:

"That new sections 2305.112 and 2745.01 of the Revised Code be enacted to read as follows:

"Sec. 2305.112.(A) AN ACTION FOR AN EMPLOYMENT INTENTIONAL TORT UNDER SECTION 2745.01 OF THE REVISED CODE SHALL BE BROUGHT WITHIN ONE YEAR OF THE EMPLOYEE'S DEATH OR THE DATE ON WHICH THE EMPLOYEE KNEW OR THROUGH THE EXERCISE OF REASONABLE DILIGENCE SHOULD HAVE KNOWN OF THE INJURY, CONDITION, OR DISEASE.

"(B) AS USED IN THIS SECTION, 'EMPLOYEE' AND 'EMPLOYMENT INTENTIONAL TORT' HAVE THE SAME MEANINGS AS IN SECTION 2745.01 OF THE REVISED CODE.

"Sec. 2745.01. (A)  EXCEPT AS PROVIDED IN THIS SECTION, AN EMPLOYER SHALL NOT BE LIABLE TO RESPOND IN DAMAGES AT COMMON LAW OR BY STATUTE FOR AN INTENTIONAL TORT THAT OCCURS DURING THE COURSE OF EMPLOYMENT.  AN EMPLOYER ONLY SHALL BE SUBJECT TO LIABILITY TO AN EMPLOYEE OR THE DEPENDENT SURVIVORS OF A DECEASED EMPLOYEE IN A CIVIL ACTION FOR DAMAGES FOR AN EMPLOYMENT INTENTIONAL TORT.

"(B) AN EMPLOYER IS LIABLE UNDER THIS SECTION ONLY IF AN EMPLOYEE OR THE DEPENDENT SURVIVORS OF A DECEASED EMPLOYEE WHO BRING THE ACTION PROVE BY CLEAR AND CONVINCING EVIDENCE THAT THE EMPLOYER DELIBERATELY COMMITTED ALL OF THE ELEMENTS OF AN EMPLOYMENT INTENTIONAL TORT.

"(C)  IN AN ACTION BROUGHT UNDER THIS SECTION, BOTH OF THE FOLLOWING APPLY:

"(1) IF THE DEFENDANT EMPLOYER MOVES FOR SUMMARY JUDGMENT, THE COURT SHALL ENTER JUDGMENT FOR THE DEFENDANT UNLESS THE PLAINTIFF EMPLOYEE OR DEPENDENT SURVIVORS SET FORTH SPECIFIC FACTS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE TO ESTABLISH THAT THE EMPLOYER COMMITTED AN EMPLOYMENT INTENTIONAL TORT AGAINST THE EMPLOYEE;

"(2)  NOTWITHSTANDING ANY LAW OR RULE TO THE CONTRARY, EVERY PLEADING, MOTION, OR OTHER PAPER OF A PARTY REPRESENTED BY AN ATTORNEY SHALL BE SIGNED BY AT LEAST ONE ATTORNEY OF RECORD IN THE ATTORNEY'S INDIVIDUAL NAME AND IF THE PARTY IS NOT REPRESENTED BY AN ATTORNEY, THAT PARTY SHALL SIGN THE PLEADING, MOTION, OR PAPER.  FOR THE PURPOSES OF THIS SECTION, THE SIGNING BY THE ATTORNEY OR PARTY CONSTITUTES A CERTIFICATION THAT THE SIGNER HAS READ THE PLEADING, MOTION, OR OTHER PAPER; THAT TO THE BEST OF THE SIGNER'S KNOWLEDGE, INFORMATION, AND BELIEF FORMED AFTER REASONABLE INQUIRY IT IS WELL GROUNDED IN FACT OR A GOOD FAITH ARGUMENT FOR THE EXTENSION, MODIFICATION, OR REVERSAL OF EXISTING LAW; AND THAT IT IS NOT INTERPOSED FOR ANY IMPROPER PURPOSE, INCLUDING, BUT NOT LIMITED TO, HARASSING OR CAUSING UNNECESSARY DELAY OR NEEDLESS INCREASE IN THE COST OF THE ACTION.

"IF THE PLEADING, MOTION, OR OTHER PAPER IS NOT SIGNED AS REQUIRED IN DIVISION (C)(2) OF THIS SECTION, THE COURT SHALL STRIKE THE PLEADING, MOTION, OR OTHER PAPER UNLESS THE ATTORNEY OR PARTY PROMPTLY SIGNS IT AFTER THE OMISSION IS CALLED TO THE ATTORNEY'S OR PARTY'S ATTENTION.  IF A PLEADING, MOTION, OR OTHER PAPER IS SIGNED IN VIOLATION OF DIVISION (C)(2) OF THIS SECTION, THE COURT, UPON MOTION OR UPON ITS OWN INITIATIVE, SHALL IMPOSE UPON THE PERSON WHO SIGNED IT, OR THE REPRESENTED PARTY, OR BOTH, AN APPROPRIATE SANCTION.  THE SANCTION MAY INCLUDE, BUT IS NOT

attempt by the General Assembly to govern when and under what circumstances an intentional tort claim may be commenced and maintained by an employee against his or her employer.[3]   Notably, in Section 3 of Am.H.B. No. 103[4], the General Assembly has declared its intent to supersede the effects of several decisions of this court and to establish statutory standards, different from the common law, with respect to intentional torts in the workplace.

LIMITED TO, AN ORDER TO PAY TO THE OTHER PARTY THE AMOUNT OF THE REASONABLE EXPENSES INCURRED DUE TO THE FILING OF THE PLEADING, MOTION, OR OTHER PAPER, INCLUDING REASONABLE ATTORNEY'S FEES.
    "(D)  AS USED IN THIS SECTION:
    "(1)  'EMPLOYMENT INTENTIONAL TORT' MEANS AN ACT COMMITTED BY AN EMPLOYER IN WHICH THE EMPLOYER DELIBERATELY AND INTENTIONALLY INJURES, CAUSES AN OCCUPATIONAL DISEASE OF, OR CAUSES THE DEATH OF AN EMPLOYEE.
    "(2)  'EMPLOYER' MEANS ANY PERSON WHO EMPLOYS AN INDIVIDUAL.
    "(3)  'EMPLOYEE' MEANS ANY INDIVIDUAL EMPLOYED BY AN EMPLOYER.
    "(4)  'EMPLOY' MEANS TO PERMIT OR SUFFER TO WORK."

3.  For an overview of the history of Ohio workers' compensation law prior to the enactment of Am.H.B. No. 103, see *Brady v. Safety-Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722. See, also, Note *Blankenship v. Cincinnati Milacron Chemical Co.*: Workers' Compensation and the Intentional Tort — A New Direction for Ohio (1987), 12 Cap.U.L.Rev. 286; and Claybon, Ohio's "Employment Intentional Tort": A Workers' Compensation Exception, or the Creation of an Entirely New Cause of Action? (1996), 44 Clev.St.L.Rev. 381.

4.  Section 3, Am.H.B. No. 103, 146 Ohio Laws, Part I, 758, provides:
    "The General Assembly hereby declares its intent in enacting sections 2305.112 and 2745.01 of the Revised Code to supersede the effect of the Ohio Supreme Court decisions in *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608 [23 O.O.3d 504, 433 N.E.2d 572] (decided March 3, 1982); *Jones v. VIP Development Co.* (1982 [*sic*, 1984]), 15 Ohio St.3d 90 [15 OBR 246, 472 N.E.2d 1046] (decided December 31, 1982 [*sic*, 1984]); *Van Fossen v. Babcock & Wilcox* (1988), 36 Ohio St.3d 100 [522 N.E.2d 489] (decided April 14 [*sic*, 13], 1988); *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124 [522 N.E.2d 511] (decided April 13, 1988); *Hunter v. Shenango Furnace Co.* (1988), 38 Ohio St.3d 235 [527 N.E.2d 871] (decided August 24, 1988); and *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115 [570 N.E.2d 1108] (decided May 1, 1991), to the extent that the provisions of sections 2305.112 and 2745.01 of the Revised Code are to completely and solely control *all* causes of actions not governed by Section 35 of Article II, Ohio Constitution, for physical or psychological conditions, or death, brought by employees or the survivors of deceased employees against employers." (Emphasis added.)  While the General Assembly does *not* say so in this provision, it is our hope and belief that what is meant are causes of action accruing during the course of employment.

**{¶ 10}** BP and its supporting *amici curiae* contend that R.C. 2745.01 is constitutional in all respects. To that end, BP and its supporting *amici curiae* argue that the General Assembly has the authority under its police powers to enact legislation that establishes standards different from the common law, that other jurisdictions have upheld legislation similar to R.C. 2745.01, and that R.C. 2745.01 represents a reasonable balance between employee and employer interests.

**{¶ 11}** We do not dispute the long-standing principle that the General Assembly has the authority, within constitutional limitations, to change the common law by legislation. See *Thompson v. Ford* (1955), 164 Ohio St. 74, 79, 57 O.O. 96, 99, 128 N.E.2d 111, 115. We are also mindful of the fundamental precepts that all legislative enactments enjoy a strong presumption of constitutionality, *Arnold v. Cleveland* (1993), 67 Ohio St.3d 35, 38, 616 N.E.2d 163, 166, and that the role of a court when considering the constitutionality of an Act is not to judge the wisdom of the legislation, *Austintown Twp. Bd. of Trustees v. Tracy* (1996), 76 Ohio St.3d 353, 356, 667 N.E.2d 1174, 1176. However, these general principles are not absolute. Thus, when the validity of a statute is challenged on constitutional grounds, it is our duty to determine the meaning and effect of the Constitution vis-a-vis the challenged legislation. *State ex rel. Bishop v. Mt. Orab Village School Dist. Bd. of Edn.* (1942), 139 Ohio St. 427, 438, 22 O.O. 494, 498, 40 N.E.2d 913, 919. Moreover, if the legislation at issue exceeds the limits of legislative power, we must protect the rights of the citizens effected by the law and, if appropriate, declare the legislation invalid.

**{¶ 12}** In response to our holdings in *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, and *Jones v. VIP Dev. Co*. (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, the General Assembly enacted former R.C. 4121.80 (Am.Sub.S.B. No. 307, 141 Ohio Laws, Part I, 733-737). See *Brady v. Safety-Kleen Corp*. (1991), 61 Ohio St.3d 624, 631, 576 N.E.2d 722, 727, citing *Kunkler v. Goodyear Tire & Rubber*

*Co*. (1988), 36 Ohio St.3d 135, 136-137, 522 N.E.2d 477, 479. In *Brady*, the court invalidated former R.C. 4121.80 in its entirety, and, in doing so, we thought that we had made it abundantly clear that any statute created to provide employers with immunity from liability for their intentional tortious conduct cannot withstand constitutional scrutiny. See, also, *State ex rel. Ohio AFL-CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 230, 631 N.E.2d 582, 587.[5] Notwithstanding, the General Assembly has enacted R.C. 2745.01, and, again, seeks to cloak employers with immunity. In this regard, we can only assume that the General Assembly has either failed to grasp the import of our holdings in *Brady* or that the General Assembly has simply elected to willfully disregard that decision. In any event, we will state again our holdings in *Brady* and hopefully put to rest any confusion that seems to exist with the General Assembly in this area.

{¶ 13} In *Brady*, the court held that former R.C. 4121.80 exceeded the power conferred by and conflicted with both Sections 34[6] and 35,[7] Article II of the

---

5. In *State ex rel. Ohio AFL-CIO v. Voinovich* (1994), 69 Ohio St.3d 225, 230, 631 N.E.2d 582, 587, this court restated its holding in *Brady* that "intentional torts are completely unrelated to workers' compensation and the employment relationship." Thus, relying on *Brady,* we held in *Voinovich* that "the intentional tort provision under newly enacted [now former] R.C. 2745.01 [see Am.H.B. No. 107, 145 Ohio Laws, Part II, 3040-3041] is not and cannot be related to the common purpose of the bill, and we therefore hold that such provision violates Section 15(D), Article II of the Ohio Constitution." *Id*. Former R.C. 2745.01 (Am.H.B. No. 107, 145 Ohio Laws, Part II, 3040-3041) was virtually identical to R.C. 2745.01 (Am.H.B. No. 103, 146 Ohio Laws, Part I, 756-757). Former R.C. 2745.01 has simply been revived and restated in Am.H.B. No. 103.

6. Section 34, Article II of the Ohio Constitution states:
    "Laws may be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employes; and no other provision of the constitution shall impair or limit this power."

7. Section 35, Article II of the Ohio Constitution provides:
    "For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium

Ohio Constitution. Specifically, this court concluded that former R.C. 4121.80 was "totally repugnant" to Section 34, Article II, because, in enacting the legislation, the General Assembly eliminated an employee's right to a common-law cause of action for an employer intentional tort that would otherwise benefit the employee. *Brady,* 61 Ohio St.3d at 633, 576 N.E.2d at 728. Therefore, former R.C. 4121.80 was not a law that furthered the " 'comfort, health, safety and general welfare of all employees.' " *Id.*, quoting Section 34, Article II.

**{¶ 14}** Additionally, the court in *Brady* adopted the rationale from the dissent in *Taylor v. Academy Iron & Metal Co.* (1988), 36 Ohio St.3d 149, 162, 522 N.E.2d 464, 476,[8] and concluded that R.C. 4121.80 represented an invalid exercise of legislative authority. Specifically, the court held that "the legislature cannot, consistent with Section 35, Article II, enact legislation governing intentional torts that occur within the employment relationship, because such intentional tortious conduct will always take place outside that relationship. *Blankenship*, *supra*. Since

---

or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease."

8. In *Brady*, the court adopted the following passage from the dissent in *Taylor v. Academy Iron & Metal Co.* (1988), 36 Ohio St.3d 149, 522 N.E.2d 464:
   " 'Injuries resulting from an employer's intentional torts, even though committed at the workplace, are utterly outside the scope of the purposes intended to be achieved by Section 35 and by the Act. *Such injuries are totally unrelated to the fact of employment*. When an employer intentionally harms his employee, that act effects a complete breach of the employment relationship, and for purposes of the legal remedy for such an injury, the two parties are not employer and employee, but intentional tortfeasor and victim. If the victim brings an intentional tort suit against the tortfeasor, it is a tort action like any other. The employer has forfeited his status as such and all the attendant protections fall away. The Industrial Commission can have no jurisdiction over such an action. The lawsuit has no bearing upon any question relating to employment. The jurisdiction of the commission is limited to the matters delineated in Section 35, Article II. The General Assembly has no power to confer jurisdiction on the commission except as authorized by that constitutional provision. See *Crawford*, *supra* [110 Ohio St.], at 276, 143 N.E. at 575-576. Section 35 concerns itself solely with compensation for injuries arising from employment. R.C. 4121.80 concerns itself solely with injuries which by their nature have no connection whatsoever with the fact of employment. In enacting R.C. 4121.80, the General Assembly has exceeded the scope of the authority granted to it by the constitutional amendment, and the statute is, therefore, void as an improper exercise of legislative power.' (Emphasis *sic*.)" *Brady,* 61 Ohio St.3d at 634, 576 N.E.2d at 729, quoting *Taylor,* 36 Ohio St.3d at 162, 522 N.E.2d at 476 (Douglas, J., dissenting).

we find that Section 35, Article II authorizes only enactment of laws encompassing death, injuries or occupational disease occasioned within the employment relationship, R.C. 4121.80 cannot logically withstand constitutional scrutiny, inasmuch as it attempts to regulate an area that is beyond the reach of its constitutional empowerment." (Emphasis *sic*.) *Brady,* 61 Ohio St.3d at 634, 576 N.E.2d at 729.

{¶ 15} Clearly, the constitutional impediments at issue in *Brady,* concerning former R.C. 4121.80, also apply with equal force to R.C. 2745.01. Both statutes were enacted to serve identical purposes. Like former R.C. 4121.80, R.C. 2745.01 was created to provide immunity for employers from civil liability for employee injuries, disease, or death caused by the intentional tortious conduct of employers in the workplace.[9]

{¶ 16} Specifically, R.C. 2745.01(A) provides that an employer is not generally subject to liability for damages at common law or by statute for an intentional tort that occurs during the course of employment, but that an employer is subject to liability only for an "employment intentional tort" as defined.[10] "Employment intentional tort" is defined in R.C. 2745.01(D)(1) as "an act committed by an employer in which the employer *deliberately and intentionally* injures, causes an occupational disease of, or causes the death of an employee." (Emphasis added.) Further, R.C. 2745.01(B) states that employees or the dependent survivors of deceased employees who allege an intentional tort must demonstrate "by *clear and convincing* evidence that the employer deliberately

---

9. Section 35, Article II of the Ohio Constitution provides the basis for legislative enactments in the area of workers' compensation. Although R.C. 2745.01 was not made part of the Workers' Compensation Act (R.C. Chapter 4123), it is abundantly clear, given the nature of R.C. 2745.01, including the heightened proof standards contained therein, that the overriding purpose of the statute is to shield employers from civil liability for employee injuries caused by the intentional tortious conduct of the employer.

10. It appears that R.C. 2745.01(A) is internally inconsistent.

committed all of the elements of an employment intentional tort."[11] (Emphasis added.) This standard of clear and convincing evidence also applies to a response by the employee or the employee's representative to an employer's motion for summary judgment. R.C. 2745.01(C)(1). In addition, the statute requires that "every pleading, motion, or other paper" be signed by the attorney of record or, if the party is not represented by an attorney, by the party. R.C. 2745.01(C)(2).[12] And, if the requirements of R.C. 2745.01(C)(2) are not complied with, the court shall impose "an appropriate sanction." *Id*. The sanction may include, but is not limited to, reasonable expenses incurred by the other party, including reasonable attorney fees. *Id*.

{¶ 17} By establishing the foregoing standards in R.C. 2745.01, the General Assembly has created a cause of action that is simply illusory. Under the definitional requirements contained in the statute, an employer's conduct, in order to create civil liability, must be both *deliberate* and *intentional*. Therefore, in order to prove an intentional tort in accordance with R.C. 2745.01(D)(1), the employee, or his or her survivors, must prove, at a minimum, that the actions of the employer amount to criminal assault. In fact, given the elements imposed by the statute, it is even conceivable that an employer might actually be guilty of a criminal assault but

---

11. In comparing former R.C. 4121.80 with R.C. 2745.01, it is apparent that R.C. 2745.01 contains standards even more stringent (excessive) than those found in former R.C. 4121.80(G)(1), which did not require clear and convincing evidence.

12. R.C. 2745.01(C)(2) states, at the onset, "Notwithstanding any law or rule to the contrary." This language suggests that the General Assembly has the authority to encroach upon the rule-making authority of this court. See, however, Section 5(B), Article IV, Ohio Constitution ("The supreme court shall prescribe rules governing practice and procedure in all courts of the state, which rules shall not abridge, enlarge, or modify any substantive right. * * * All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.").

exempt from civil liability under R.C. 2745.01(D)(1). *Taylor,* 36 Ohio St.3d at 162-163, 522 N.E.2d at 476 (Douglas, J., dissenting).[13]

{¶ 18} Indeed, the requirements imposed by R.C. 2745.01 are so unreasonable and excessive that the chance of recovery of damages by employees for intentional torts committed by employers in the workplace is virtually zero. In this regard, we agree with the court of appeals that R.C. 2745.01 "creates an insurmountable obstacle for victims of 'employment intentional torts.' " See, also, Claybon, Ohio's "Employment Intentional Tort": A Workers' Compensation Exception, or the Creation of an Entirely New Cause of Action? (1996), 44 Cleve.St.L.Rev. 381, 405-406 ("To impose a clear and convincing standard of

---

13. The following excerpt from the *Taylor* dissent dealt with the definition of "intentional tort" contained in former R.C. 4121.80(G)(1), but the excerpt also exemplifies and adequately summarizes the absurdity of the elements imposed by the General Assembly in R.C. 2745.01(D)(1):

"Under this definition [former R.C. 4121.80(G)(1)], an employer, in order to be held civilly liable, must have proceeded *deliberately* to cause death or injury to an employee. The implications of this standard are astounding. Legally speaking, an employer is now subject to civil liability *only if his actions amount to criminal assault or murder*.

"R.C. 2903.02(A), setting forth the crime of murder, states: 'No person shall purposely cause the death of another.' 'Purposely' is defined in R.C. 2901.22(A), which provides that '[a] person acts purposely when it is his specific intention to cause a certain result * * *.' R.C. 4121.80(G)(1) requires that the employer act with 'deliberate intent to cause an employee to suffer * * * death.' Anything less will not result in civil liability. Thus, an employer is now civilly liable for an employee's death only if he commits murder, and even then his liability is substantially limited by other provisions of R.C. 4121.80.

"The same is true of an employer who acts intentionally to cause injury to an employee. In fact, the criminal assault statutes require a *less* culpable mental state than R.C. 4121.80. R.C. 2903.11 sets forth the elements of felonious assault as follows:

" '(A) No person shall *knowingly*:

" '(1) Cause serious physical harm to another * * *.' (Emphasis added.)

" 'Knowingly' is defined in R.C. 2901.22(B): 'A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.'

" 'Knowingly' is a less culpable state than 'purposely.' R.C. 2901.22(E); *State v. Wilkins* (1980), 64 Ohio St.2d 382, 18 O.O.3d 528, 415 N.E.2d 303. To act 'knowingly,' a person need not act with deliberate intent. *State v. Wenger* (1979), 58 Ohio St.2d 336, 339, 12 O.O.3d 309, 311, 390 N.E.2d 801, 803, at fn. 3. Thus, an employer may actually be guilty of criminal assault but exempt from civil liability under R.C. 4121.80(G)(1)!" (Emphasis *sic* and footnote omitted.) *Taylor,* 36 Ohio St.3d at 162-163, 522 N.E.2d. at 476-477 (Douglas, J., dissenting).

proof, in addition to requiring specific intent, distorts the very balance the legislature was trying to achieve. Foreseeably, it will be extremely difficult for an employee to prove a case of intentional tort in anything short of a flagrant battery. With the threat of sanctions it is also foreseeable that an employee['s] attorney will not want to file employee cases, otherwise risk being punished for what the court feels was not a 'good faith' argument, or for 'causing unnecessary delay or needless increase in the cost of the action.' ").

{¶ 19} Accordingly, we find that R.C. 2745.01 is unconstitutional in its entirety. Because R.C. 2745.01 imposes excessive standards (deliberate and intentional act), with a heightened burden of proof (clear and convincing evidence), it is clearly not "a law that furthers the ' * * * comfort, health, safety and general welfare of all employes.' " *Brady*, 61 Ohio St.3d at 633, 576 N.E.2d at 728, quoting Section 34, Article II of the Ohio Constitution. See, also, *Blankenship*, 69 Ohio St.2d at 615, 23 O.O.3d at 509, 433 N.E.2d at 577 ("one of the avowed purposes of the [Workers' Compensation] Act is to promote a safe and injury-free work environment. * * * Affording an employer immunity for his intentional behavior certainly would not promote such an environment, for an employer could commit intentional acts with impunity with the knowledge that, at the very most, his workers' compensation premiums may rise slightly."). Furthermore, because R.C. 2745.01 is an attempt by the General Assembly to govern intentional torts that occur within the employment relationship, R.C. 2745.01 "cannot logically withstand constitutional scrutiny, inasmuch as it attempts to regulate an area that is beyond the reach of constitutional empowerment." *Brady,* 61 Ohio St.3d at 634, 576 N.E.2d at 729.[14]

---

14. In the case at bar, the court of appeals determined that R.C. 2745.01 was unconstitutional on grounds other than what we have decided here today. In a well-reasoned opinion, the court of appeals held that R.C. 2745.01 denied employees equal protection of the law in violation of Section 2, Article I of the Ohio Constitution, and that the statute also violated the open courts provision, Section 16, Article I. We agree with the holdings of the court of appeals in this regard. However,

**{¶ 20}** After determining the constitutionality of R.C. 2745.01, and after reviewing the complaint, the court of appeals concluded that Johnson properly set forth a claim for common-law intentional tort against BP.  We agree.  In his complaint, Johnson alleged that he was exposed to a dangerous situation at the plant and that BP knew that such exposure would be substantially certain to cause injury. Accepting these allegations as true, as we are required to do, we hold that the complaint properly sets forth a claim of intentional tort sufficient to survive a Civ.R. 12(B)(6) motion to dismiss.  See *Mitchell v. Lawson Milk Co*. (1988), 40 Ohio St.3d 190, 532 N.E.2d 753.

**{¶ 21}** Therefore, for the foregoing reasons, the judgment of the court of appeals is affirmed with respect to its holding that R.C. 2745.01 is unconstitutional and with respect to its ruling that the complaint states a cause of action for common-law intentional tort sufficient to withstand a Civ.R. 12(B)(6) motion to dismiss. Thus, Johnson's common-law intentional tort claim is reinstated.

II

Cross-Appeal

**{¶ 22}** In his complaint, Johnson also sought recovery against BP based upon various theories of products liability.  The trial court held, and the court of appeals agreed, that Johnson was precluded from maintaining a products liability action against BP.  Johnson has filed a cross-appeal in this court with respect to this matter, and we accepted jurisdiction.  However, upon further consideration thereof, we dismiss the cross-appeal, *sua sponte*, as having been improvidently allowed.

---

we find it unnecessary to elaborate further on the substantive merits of the court of appeals' holdings given our holding in this case that R.C. 2745.01 exceeds the limits of legislative power under the Ohio Constitution.

*Judgment affirmed in part
and cross-appeal dismissed.*

RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

———————————

**COOK, J., dissenting.**

{¶ 23} The majority opinion views the issue presented by this case as a question of "what is right?" but I believe the true question is "who decides what is right?"

{¶ 24} The General Assembly passed this legislation as part of its policy-making function, a function inherent in the legislative power. With this decision, however, the majority usurps the legislative function; it cloaks judicial legislation in the guise of constitutional scholarship. Unconstitutionality is a legitimate basis for overturning democratically enacted legislation, but even gentle scrutiny of the majority opinion shows that there is no justification for labeling this legislation unconstitutional.

{¶ 25} We should be concerned by the use of judicial power to advance a particular social philosophy. When judges declare governmental actions unconstitutional based upon a personal distaste for the policies adopted through the legislative process, we cease to be governed by democracy.

{¶ 26} Our Ohio Constitution restrains the powers and discretion of government—all three branches of it.

I

{¶ 27} This case is about properly defining the term "intentional tort" in the employment context. In *Harasyn v. Normandy Metals, Inc.* (1990), 49 Ohio St.3d 173, 551 N.E.2d 962, this court distinguished "direct intent" intentional torts from other intentional torts. That case defined "direct intent" intentional torts as "where the actor does something which brings about the exact result desired." *Id.* at 175,

551 N.E.2d at 964.  It classified other intentional torts as where "the actor does something which he believes is substantially certain to cause a particular result, even if the actor does not desire that result."  *Id*.  Prior decisions of this court have set forth a broad definition of the term in the employment context, including both direct intent and inferred intent within the definition of employer intentional tort. By enacting R.C. 2745.01, the General Assembly sought to statutorily narrow that common-law definition to "direct intent" torts only.  The majority here determines the General Assembly has no authority to do this, but does not support its position with legitimate reasoning that R.C. 2745.01 offends both Sections 34 and 35, Article II of the Ohio Constitution.

II

{¶ 28} The majority, citing *Brady v. Safety-Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, concludes that R.C. 2745.01 violates Section 34, Article II of the Ohio Constitution because it "clearly" does not further the "comfort, health, safety and general welfare of all employes."  Whether the legislation does or not, Section 34, Article II does not disqualify it.

{¶ 29} Section 34, Article II resulted from claims that the General Assembly had no authority under the Constitution to legislate in the area of minimum wages and the like.  The argument against enacting such laws was that they impaired the constitutional right to contract.  So, the citizens approved a constitutional amendment setting forth that  "[l]aws *may* be passed fixing and regulating the hours of labor, establishing a minimum wage, and providing for the comfort, health, safety and general welfare of all employes; and no other provision of the constitution shall impair or limit this power."  (Emphasis added.)  Section 34, Article II, Ohio Constitution.  From that, the majority gleans a prohibition against any legislation that does *not* "provid[e] for the comfort, health, safety and general welfare of all employes."  This section does not say that the General Assembly may pass *only* laws that provide for the comfort, health, safety, and

16

general welfare of employees. It also does not say that no law may ever be passed that *does not* provide for the comfort, health, safety, and general welfare of employees. There is nothing in this *grant* of authority that can properly be read as a *limitation* on authority. Yet this is exactly the interpretation given it by a plurality in *Brady* and followed today.

{¶ 30} It is interesting to note that in *Rocky River v. State Emp. Relations Bd.* (1988), 39 Ohio St.3d 196, 530 N.E.2d 1, and *Rocky River v. State Emp. Relations Bd.* (1989), 43 Ohio St.3d 1, 539 N.E.2d 103, this court was deeply divided on the issue of whether Section 34, Article II applied to anything more than wage and hour regulation. A mere two years later, the *Brady* plurality jumped from the hotly debated conclusion that Section 34, Article II allows broader legislation for the welfare of employees, to the specious conclusion that it *prevents* any legislation that is not specifically enacted for employees' welfare. There is no better argument in today's decision, just a repeat of the *Brady* rationale.

{¶ 31} Moreover, for the majority to cite Section 34, Article II, a provision aimed at *employee* welfare, as a basis for holding R.C. 2745.01 unconstitutional is inconsistent with its premise that the injuries to Brady and Johnson were not sustained by them as *employees* — given that employer intentional torts fall outside the scope of employment. Justice Brown noted this inconsistency in his *Brady* concurrence when he stated, "[Section 34, Article II] does not apply to employer intentional torts because they are not part of the employment relationship." *Brady,* 61 Ohio St.3d at 639, 576 N.E.2d at 733.

{¶ 32} Accordingly, Section 34, Article II offers no basis for finding R.C. 2745.01 unconstitutional.

### III

{¶ 33} The other basis the majority cites for finding R.C. 2745.01 unconstitutional is the immunity/exclusivity provision of Section 35, Article II of the Ohio Constitution. The majority's argument, resurrected from *Brady*, is that

Section 35 grants authority to the General Assembly to enact laws regarding injuries occasioned within the employment context, and thus, somehow, this section thereby proscribes the passing of any laws affecting injuries outside the scope of employment. Like its Section 34 argument, the majority's Section 35 argument is unconvincing in its efforts to convert a grant of authority into a restraint. *Brady,* 61 Ohio St.3d at 634, 576 N.E.2d at 729. Justice Brown also noted this inconsistency in his *Brady* concurrence, saying: "Intentional torts do not * * * come within the scope of Section 35, Article II. This does not mean, however, that the General Assembly has *no* power to modify intentional tort law by legislation. The legislature may do so in the exercise of its police power." (Emphasis *sic*.) *Id.* at 640, 576 N.E.2d at 733.

{¶ 34} The majority concedes that "the General Assembly has the authority, within constitutional limitations, to change the common law by legislation." If, as *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, concludes, Section 35, Article II does not preempt common-law or statutory actions for employer intentional torts, then the General Assembly has authority to legislate in this area. This includes the authority to determine the contextual definition for intentional tort. If, as *Brady* concludes, Section 35, Article II precludes the legislation now at issue, then it can only be because such torts *do* arise within the course of employment. But Section 35, Article II cannot be both inapplicable to employer intentional torts and, at the same time, offended by any legislation regulating such torts. Yet those are exactly the contradictory conclusions reached by *Brady* and followed here.

IV

{¶ 35} Though unnecessary in this dissent, I wish to take issue with the "outside the scope of employment" fiction initially employed in *Blankenship*. In *Ruckman v. Cubby Drilling, Inc.* (1998), 81 Ohio St.3d 117, 689 N.E.2d 917, this court stated that the phrase "in the course of employment" limited compensable

injuries "to those sustained by an employee while performing a required duty in the employer's service." *Id.* at 120, 689 N.E.2d at 921. "An injury is compensable if it is sustained by an employee while that employee engages in activity that is consistent with the contract for hire and logically related to the employer's business." *Id.*

{¶ 36} *Blankenship* involved employees who claimed they were rendered ill by exposure to noxious chemicals while performing assigned duties for their employer. Nevertheless, the *Blankenship* majority concluded that employer intentional torts, although occurring within the course of employment, were nonetheless excluded from the pervasive immunity provided by Section 35, Article II. *Blankenship,* 69 Ohio St.2d at 612-614, 23 O.O.3d at 507-508, 433 N.E.2d at 575-577.

{¶ 37} In *Brady,* an employee who was on his shift, performing the duties expected of him, claimed he was injured when he helped clean up an accidental chemical spill caused by another employee, similarly performing his assigned duties for the same employer. In *Walton v. Springwood Products, Inc.* (1995), 105 Ohio App.3d 400, 401, 663 N.E.2d 1365, 1366, an employee was injured "in the course and scope of his employment" when his hand was caught in the machine he was operating for his employer. In *Cook v. Cleveland Elec. Illum. Co.* (1995), 102 Ohio App.3d 417, 419-420, 657 N.E.2d 356, 358, an employee was injured "in the course and scope of his employment" while performing "a normal part of his duties." And in *McGee v. Goodyear Atomic Corp.* (1995), 103 Ohio App.3d 236, 239, 659 N.E.2d 317, 319, an employee claimed he suffered liver damage due to exposure to a chemical solvent "[t]hroughout his employment." See, also, *Richey v. Johnson & Hardin Co.* (July 17, 1998), Hamilton App. No. C-970767, unreported, 1998 WL 395899 (employee injured while cleaning a printing press for his employer); *Jones v. Gen. Motors Corp.* (May 9, 1997), Defiance App. No. 4-

96-21, unreported, 1997 WL 232730 (employee fatally injured while performing an ordinary task assigned by his employer).

{¶ 38} Despite what would seem to be an indisputable fact that *all* of these injuries arose in the course of employment, and despite the clear language of Section 35, Article II precluding remedies other than workers' compensation for such injuries, the courts in these cases found that the employer could be liable to respond in damages. The facts in this case are similar. As the majority notes, Johnson himself concedes in his complaint that he was injured "during the course of his employment." But, following *Blankenship*, the majority concludes that Johnson was injured outside the scope of his employment, although his injuries were sustained "while performing a required duty in the employer's service," *Ruckman,* 81 Ohio St.3d at 120, 689 N.E.2d at 921, and while "engage[d] in activity that is consistent with the contract for hire and logically related to the employer's business." *Id.* Our Constitution requires that such injuries be compensated by workers' compensation *in lieu of any other* statutory or common-law remedy.

V

{¶ 39} The morass created by *Blankenship* and its progeny concerning the definition of an employer intentional tort is exactly what the General Assembly attempted to remedy by enacting R.C. 2745.01 — to foreclose the filing of cases in derogation of the clear language of Section 35, Article II and the exclusivity intended to be afforded that provision.

VI

{¶ 40} The majority opinion discloses its unfavorable view of the public policy behind R.C. 2745.01 by characterizing it as the General Assembly's attempt "to provide employers with immunity from liability for their intentional tortious conduct." The statute, however, codifies a cause of action for employees for injuries not covered under Section 35, Article II.

20

**{¶ 41}** The majority is troubled by the legislative policy of setting a high bar for tort actions in derogation of Section 35, Article II, calling the resulting cause of action "simply illusory" and the requirements "unreasonable and excessive." But in a constitutional democracy, one is moved to ask, "Says who?" The majority also complains about the General Assembly's choice of policy, commenting that "the chance of recovery of damages by employees for intentional torts committed by employers in the workplace is virtually zero." The likelihood of recovery, however, seems far afield of the two asserted arguments for unconstitutionality. Instead, it expresses disdain for the General Assembly's public-policy decision.

**{¶ 42}** It is true that the statute may rarely be invoked. But that ought to be the case when claims are permitted in derogation of the constitutional compromise between employers and employees. And one would hope that an employer deliberately injuring an employee would be very rare indeed.

VII

**{¶ 43}** " 'The question, whether a law be void for its repugnancy to the Constitution is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case.' " *State ex rel. Dickman v. Defenbacher* (1955), 164 Ohio St. 142, 154, 57 O.O. 134, 140, 128 N.E.2d 59, 67, quoting *Fletcher v. Peck* (1810), 10 U.S. (6 Cranch) 87, 128, 3 L.Ed. 162, 175. I believe the majority errs today by finding this legislation unconstitutional. Therefore, I respectfully dissent.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

––––––––––––––––

**LUNDBERG STRATTON, J., dissenting.**

**{¶ 44}** Today the majority once again strikes down a constitutionally valid attempt by the General Assembly to restore balance between employees' and employers' rights in the context of workplace injuries.

**{¶ 45}** My dissent is grounded in the history of the workers' compensation system. In Ohio, prior to 1911, an employee attempting to recover damages against an employer for injuries sustained in the workplace had to file a common-law action against his or her employer. *Brady v. Safety-Kleen Corp.* (1991), 61 Ohio St.3d 624, 643, 576 N.E.2d 722, 735 (Holmes, J., dissenting). Injured employees were required to prove that the employer had a duty of care toward them and that the employer breached that duty. Keeton, Dobbs, Keeton & Owens, Prosser & Keeton on the Law of Torts (5 Ed.1984), Section 80, 569, 572-573. Employers could raise three defenses against such claims: (1) contributory negligence, (2) assumption of the risk, and (3) the fellow servant rule. Note, Exceptions to the Exclusive Remedy Requirements of Workers' Compensation Statutes (1983), 96 Harv.L.Rev. 1641, 1644. But "[t]his system of litigation for obtaining compensation for work-related injuries became widely recognized as not meeting the needs of injured workers. In Ohio, a great number of such injuries were reportedly going uncompensated because of the legal defenses available to the employer." *Brady* at 643, 576 N.E.2d at 735 (Holmes, J., dissenting).

**{¶ 46}** In response to the crisis, in 1911, the General Assembly enacted Ohio's first workers' compensation law. See 102 Ohio Laws 524 *et seq*. The Workers' Compensation Act provided a more equitable system for compensating employees' work-related injuries. Both employer and employee could avoid the burdensome cost of litigation. Claybon, Ohio's "Employment Intentional Tort": A Workers' Compensation Exception, or the Creation of an Entirely New Cause of Action? (1996), 44 Cleve.St.L.Rev. 381, 386. The employee received a prompt recovery for injuries that occurred in the workplace without having to prove negligence. *Id.* In return, the employer was no longer subject to uncertain damages

by way of lawsuits, but also could no longer assert any defense. *Id*. G.C. 1465-57 of the newly enacted workers' compensation law provided that any employer who paid the state insurance fund premiums "shall not be liable to respond in damages at common law or by statute, save as hereinafter provided, for injuries or death of any such employee." 102 Ohio Laws 524, 528. However, there were two exceptions to the exclusivity of the workers' compensation remedy. If an employee's injuries were caused by a "wilful" act of the employer or if an employee's injuries were caused by an employer's violation of a safety ordinance or statute, the employee could opt for either a common-law action against the employer or recovery under the workers' compensation system. G.C. 1465-61, 102 Ohio Laws 524, 529. Employer participation was not compulsory. G.C. 1465-57, 1465-58, *id.* at 528.

{¶ 47} In 1912, Section 35, Article II of the Ohio Constitution was adopted, which authorized the General Assembly to establish and regulate a workers' compensation fund that required employer participation.

{¶ 48} In 1931, the General Assembly repealed the exceptions for willful acts and for employers' violations of safety standards. 114 Ohio Laws 26, 39, repealing G.C. 1465-76 (formerly G.C. 1465-61). Awards for violations of specific safety requirements were absorbed and codified into the workers' compensation system as awards supplemental to the workers' compensation benefits if an employer's violation of a specific safety requirement ("VSSR") caused the employee's injury. See, *e.g., State ex rel. Go-Jo Industries v. Indus. Comm.* (1998), 83 Ohio St.3d 529, 700 N.E.2d 1264. Subsequent to the repeal of the willful-act exception, courts interpreted the workers' compensation system to be the exclusive remedy for work-related injuries.

{¶ 49} But in 1982, this court in *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, held that an employee is not precluded by the exclusivity provisions of the workers'

compensation laws from bringing a common-law intentional tort action against the employer because workers' compensation covers only injuries received in the course of or arising out of employment, whereas an intentional act occurs outside the scope of employment. Two years later, in *Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, the court defined an intentional tort in the employment setting as "an act committed with the intent to injure another, or committed with the belief that such injury is substantially certain to occur." *Id.*, paragraph one of the syllabus. While recognizing that "intent to injure" was a requirement for intentional tort, the court in *Jones* also determined that conduct by an employer that *lacks* specific intent to injure can also be an "intentional" tort. In response to *Jones,* the General Assembly enacted R.C. 4121.80, which defined "intentional tort" in the employment setting as follows:

"(G) As used in this section:

"(1) 'Intentional tort' is an act committed with the intent to injure another or committed with the belief that the injury is substantially certain to occur.

" * * *

" '*Substantially certain' means that an employer acts with deliberate intent to cause an employee to suffer injury, disease, condition, or death.*" (Emphasis added.) 1986 Am.Sub.S.B. No. 307, 141 Ohio Laws, Part I, 736.

{¶ 50} Despite the General Assembly's definition in R.C. 4121.80 of "substantially certain" as requiring "deliberate intent to cause * * * injury," the court in *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, held that some acts committed with a culpability greater than recklessness, but not deliberately done with an intent to injure, should be recognized as intentional. *Id.* at paragraph six of the syllabus. This holding was essentially echoed in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108.

**{¶ 51}** In a final undoing of the General Assembly's work, the court in *Brady v. Safety-Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, held that R.C. 4121.80 was unconstitutional *in toto. Id.* at paragraph two of the syllabus.

**{¶ 52}** In these cases, this court has blurred the distinction between conduct truly outside the scope of employment (an intentional act) and conduct that is part and parcel of the employment relationship. But I believe that only injuries caused by truly *intentional* acts fall outside the coverage of the workers' compensation system, as established by Section 35, Article II of the Ohio Constitution, and may be the basis for an intentional tort action against an employer, while all other injuries are compensable only through the workers' compensation system. Section 35, Article II of the Ohio Constitution does not differentiate between types or causes of injuries. Its language is all-encompassing:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing [a workers' compensation system]. Such compensation shall be in lieu of *all other rights* to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, *shall not be liable to respond in damages at common law* or by statute for such death, injuries or occupational disease."

**{¶ 53}** The court makes no differentiation between degrees of risk levels of knowledge and certainty in interpreting the workers' compensation laws. The fact patterns in *Jones* and *Van Fossen* clearly fall under Section 35, Article II of the Ohio Constitution as part of the workers' compensation trade-off. This court, in its line of decisions since *Blankenship*, has imposed another level of compensation for employees despite the clear proof that these injuries were part and parcel of the employment relationship.

**{¶ 54}** It is in light of this history that I disagree with the majority's holding that R.C. 2745.01 is unconstitutional pursuant to Sections 34 and 35, Article II of the Ohio Constitution.

**{¶ 55}** In supporting its position in this case, the majority reiterates reasoning from *Brady v. Safety-Kleen Corp.*, 61 Ohio St.3d 624, 576 N.E.2d 722. In *Brady,* the court determined that R.C. 4121.80 exceeded the authority granted by Sections 34 and 35 of Article II of the Ohio Constitution. The majority, therefore, holds that R.C. 2745.01 likewise violates these sections of the Constitution.

Section 34, Article II of the Ohio Constitution

**{¶ 56}** I would hold that R.C. 2745.01 does not conflict with Section 34, Article II of the Ohio Constitution. Section 34, Article II of the Ohio Constitution states:

"Laws may be passed * * * providing for the comfort, health, safety and general welfare of all employees * * *."

**{¶ 57}** The plurality opinion in *Brady* stated that "[a] legislative enactment that attempts to remove a right to a remedy under common law that would otherwise benefit the employee cannot be held to be a law that furthers the ' * * * comfort, health, safety and general welfare of all employees * * *.' " *Id*., 61 Ohio St.3d at 633, 576 N.E.2d at 728. The majority here makes the same conclusion about R.C. 2745.01.

**{¶ 58}** In support of its holding that R.C. 2745.01 violates Section 34, Article II of the Ohio Constitution, the majority states, "[L]ike former R.C. 4121.80, R.C. 2745.01 was created to provide immunity for employers from civil liability for employee injuries, disease, or death caused by the intentional tortious conduct of employers in the workplace." I disagree and believe that the opposite is true. R.C. 2745.01 does not deny but instead expressly provides employees a statutory avenue of redress for employee injuries caused by employer intentional torts. Specifically, R.C. 2745.01(A) states:

"An employer * * * shall be *subject* to liability to an employee * * * for damages *for an employment intentional tort*." (Emphasis added.)

**{¶ 59}** This language does not remove a right to a remedy. It codifies it. Codification is not removal.

**{¶ 60}** Without question the General Assembly's definition of intentional tort sets a higher threshold in defining intentional tort than the court-fashioned definition. However, it was the court that resurrected the intentional tort exception to workers' compensation laws in *Blankenship* and then diluted its definition in *Jones* and its progeny to an act done with knowledge that it is substantially certain to cause harm, as opposed to an act done with the intent to cause harm. See *Bishop v. Hybud Equip. Corp.* (1988), 42 Ohio App.3d 55, 58, 536 N.E.2d 694, 697. Further, in the original workers' compensation laws, there was a willful-act exception to the exclusivity of the workers' compensation coverage. See G.C. 1465-76, 104 Ohio Laws 193, 194 (which defined "wilful act" as "an act done knowingly and purposely with the direct object of injuring another"). Thus, in effect, R.C. 2745.01, which requires "deliberate intent" to cause injury, does not remove a right to a remedy; it merely restores the definition of intentional tort to its proper and original, bargained-for definition. But even this definition was part of the *Jones* holding: "An intentional tort is an act committed with the intent to injure another * * *." *Jones,* 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, at paragraph one of the syllabus, and, therefore, has already been approved by this court.

**{¶ 61}** The majority also complains that the definitional restrictions in requiring an employment intentional tort to be deliberate and intentional render the cause of action illusory. Yet the original definition of "intentional tort" is an act done with intent to cause harm, not an act done with knowledge that it is substantially certain to cause harm. *Bishop*, 42 Ohio App.3d at 58, 536 N.E.2d at 697. The mere fact the evidence will seldom dictate that an employee has a

legitimate intentional tort case does not render R.C. 2745.01 unconstitutional. I believe we must uphold the true definition of intentional tort to prevent an "expansive interpretation of the intentional tort exception [which] would thwart the [workers' compensation] scheme by eroding the exclusivity of both the liability and the recovery provided by workers' compensation." *Van Fossen*, 36 Ohio St.3d at 113, 522 N.E.2d at 501.

{¶ 62} It is important to remember, in contrast to the bleak picture the majority depicts, that there is an avenue of redress for these particularly egregious, but not quite intentional, acts perpetrated by the employer that cause injury to an employee. Where an employer violates a specific safety requirement and that violation causes the employee injury, the employee can recover workers' compensation benefits *and* a VSSR award, which works not only to provide additional compensation to the employee but also to punish the employer for that conduct.

{¶ 63} Thus, R.C. 2745.01 does not remove a right to remedy, because employees have remedies available to them, as they had prior to the enactment of R.C. 2745.01. For injuries caused by no fault at all or by the negligence or recklessness of an employer, an employee may recover workers' compensation benefits. For injuries caused by more egregious acts of recklessness, an employer may be fined and employees may receive additional compensation by way of a VSSR award. Finally, where the employer commits a truly intentional act, the employee may bring an intentional tort action against the employer pursuant to R.C. 2745.01.

{¶ 64} Accordingly, I would hold that R.C. 2745.01 does not conflict with Section 34, Article II of the Ohio Constitution.

Section 35, Article II of the Ohio Constitution

{¶ 65} The majority also finds R.C. 2745.01 unconstitutional because Section 35, Article II of the Ohio Constitution authorizes only legislation pertaining

to acts that occur within the employment relationship. Therefore, the majority holds, the General Assembly went beyond the authority of Section 35, Article II of the Ohio Constitution because R.C. 2745.01 attempts to regulate conduct, intentional torts, that necessarily occurs outside the employment relationship. I would hold that the General Assembly has authority beyond Section 35, Article II of the Ohio Constitution to enact R.C. 2745.01.

{¶ 66} I believe that the General Assembly never intended to rely on Section 35, Article II of the Ohio Constitution as authority for enacting R.C. 2745.01. Am.H.B. No. 103, which enacted R.C. 2745.01, states:

"The General Assembly hereby declares its intent in enacting sections 2305.112 and 2745.01 of the Revised Code to supersede the effect of the Ohio Supreme Court decisions in *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608 [23 O.O.3d 504, 433 N.E.2d 572] (decided March 3, 1982); *Jones v. VIP Development Co.* (1982 [*sic*, 1984]), 15 Ohio St.3d 90 [15 OBR 246, 472 N.E.2d 1046] (decided December 31, 1982 [*sic*, 1984]); *Van Fossen v. Babcock & Wilcox* (1988), 36 Ohio St.3d 100 [522 N.E.2d 489] (decided April 14 [*sic*, 13], 1988); *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124 [522 N.E.2d 511] (decided April 13, 1988); *Hunter v. Shenango Furnace Co.* (1988), 38 Ohio St.3d 235 [527 N.E.2d 871] (decided August 24, 1988); and *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115 [570 N.E.2d 1108] (decided May 1, 1991), to the extent that the provisions of sections 2305.112 and 2745.01 of the Revised Code are to *completely and solely control* all causes of action *not* governed by Section 35, Article II, Ohio Constitution * * *." (Emphasis added.) *Id*. at Section 3, 146 Ohio Laws, Part I, 758.

{¶ 67} The General Assembly had authority to enact R.C. 2745.01 under its general grant of legislative power and did not need to rely on the specific grant of authority in Section 35, Article II of the Ohio Constitution. And, in fact, the

General Assembly specifically stated that R.C. 2745.01 was to control actions *not* governed by Section 35, Article II of the Ohio Constitution.

{¶ 68} Section 1, Article II of the Ohio Constitution provides that "[t]he legislative power of the state shall be vested in a General Assembly." Within this general grant of authority is the General Assembly's police power. See *Marmet v. State* (1887), 45 Ohio St. 63, 70, 12 N.E. 463, 468. The General Assembly's ability to legislate under the police power "is plenary, except as it may be specifically and clearly limited in the constitution." *Champaign Cty. Bd. of Commrs. v. Church* (1900), 62 Ohio St. 318, 344, 57 N.E. 50, 52. Within the scope of these police powers, the General Assembly "may modify or entirely abolish common-law actions and defenses." *Thompson v. Ford* (1955), 164 Ohio St. 74, 79, 57 O.O. 96, 99, 128 N.E.2d 111, 115. The General Assembly has authority to codify the common law. See, *e.g., Long v. Tokai Bank of California* (1996), 114 Ohio App.3d 116, 123, 682 N.E.2d 1052, 1057 (recognizing the General Assembly's power to codify products liability law). Thus, R.C. 2745.01 is a valid exercise of the General Assembly's police power because R.C. 2745.01 is a codification and modification of employer intentional tort case law.

{¶ 69} While the majority may prefer its own definition of "intentional tort," it does not have the right to usurp the General Assembly's role in this regard because "[j]udicial policy preferences may not be used to override valid legislative enactments, for the General Assembly should be the final arbiter of public policy." *State v. Smorgala* (1990), 50 Ohio St.3d 222, 223, 553 N.E.2d 672, 674.

{¶ 70} Therefore, I would hold that pursuant to its police power, the General Assembly had the authority to change and codify the law of employment intentional torts pursuant to R.C. 2745.01. I would also hold that R.C. 2745.01 addresses acts that occur outside the scope of employment; therefore, Section 35, Article II of the Ohio Constitution is no impediment to its enactment.

Conclusion

{¶ 71} In conclusion, I would find that R.C. 2745.01 does not violate Section 34, Article II of the Ohio Constitution because it does not deprive employees of a right to a remedy, but in fact provides an action for an employment intentional tort. I would further find that R.C. 2745.01 does not violate Section 35, Article II of the Ohio Constitution because the General Assembly derived the authority to enact R.C. 2745.01 from its police power. Therefore, I dissent.

_____