YOUNGBIRD et al., Appellants,

v.

WHIRLPOOL CORPORATION, Appellee, et al.

[Cite as *Youngbird v. Whirlpool Corp.* (1994), 99 Ohio App.3d 740.]

Court of Appeals of Ohio,
Third District, Hancock County.

No. 5–93–17.

Decided Feb. 1, 1994.

*Williams, Jilek, Lafferty & Gallagher Co., L.P.A.,* and *Drew R. Masse,* for appellants.

*Robert M. Anspach Associates, J. Roy Nunn* and *Robert M. Anspach,* for appellee.

EVANS, Presiding Judge.

This is an appeal by the plaintiffs, Joseph C. Youngbird and Madalen J. Youngbird ("appellants"), from a judgment of the Hancock County Court of Common Pleas in favor of the defendant, Whirlpool Corporation ("appellee"). Following a lengthy procedural history, the trial court granted Whirlpool's motion for summary judgment and dismissed the Youngbirds' claims for intentional tort and loss of consortium.

Since the procedural history of this action is long and complex, we have only briefly set forth those particulars necessary to our discussion of the issues before us on appeal. On December 1, 1980, Joseph Youngbird received a severe injury to his left arm and hand while in the course of his employment as a "shear line operator" for the Whirlpool Corporation, Findlay Division. Youngbird's injuries resulted from an accident that occurred while he was cleaning the rollers on a Roll Leveler and Shearing machine which had been manufactured for Whirlpool by Wean Industries, Inc., and/or its subsidiaries.

On October 13, 1982, following his receipt of workers' compensation benefits for employment-related injury, Youngbird filed this action in products liability against Wean Industries and Ace Hayward Co., installer of the machinery, and against Whirlpool, alleging commission of an intentional tort. Youngbird's claim was accompanied by his wife's claim for loss of consortium due to the severity of Youngbird's injuries.

All the claims and cross-claims in the case were eventually disposed of, except for the appellants' claims against Whirlpool. Although Whirlpool first filed its motion for summary judgment on April 25, 1984, because of the erratic development of and changes in the intentional tort exception to the workers' compensation law,[1] the motion was not finally ruled upon by the court until April 16, 1993. Following the court's grant of summary judgment in favor of Whirlpool and dismissal of the complaint,[2] the Youngbirds timely appealed to this court, asserting the following assignment of error:

"The trial court below committed plain error in rendering summary judgment against the appellant because, under the circumstances of this case, a genuine issue of material fact exists as to whether appellant's injuries were substantially certain to occur."

In defense of the trial court's decision to grant summary judgment, appellee has presented three cross-assignments of error, asserting that, even if the court's rationale for its decision is in error, summary judgment was properly granted for other reasons. Appellee asserts the following "cross-assignments of error":

"1. The trial court erred to the extent it failed to hold that Whirlpool is entitled to summary judgment because no reasonable person could conclude that any Whirlpool supervisor had knowledge that Youngbird was using a prohibited cleaning procedure.

---

1. For an expansive discussion and explanation of the history of the intentional tort exception to the workers' compensation law, see the Supreme Court's opinion in *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 576 N.E.2d 722, wherein the court declared R.C. 4121.80 "unconstitutional *in toto.*" See, also, *id.* at 635, 576 N.E.2d at 730 (Douglas, J., concurring); *id.* at 642, 576 N.E.2d at 734 (Holmes, J., dissenting).

2. Appellee's original motion for summary judgment, filed on April 25, 1984, was based upon rules of law which have been overruled or are inapplicable in this jurisdiction. See, *e.g., Jones v. VIP Dev. Co.* (1984), 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, syllabus. If the trial court herein had granted judgment on any of the legal bases asserted by appellee, we would have had to reverse the judgment. However, while the parties' motions for summary judgment were pending, various motions were filed requesting additional time and discovery due to the newly issued Supreme Court opinions clarifying the "intentional tort" issues. Thus, the court's judgment was eventually rendered, on April 16, 1993, based upon the most recent declarations of the Supreme Court.

"2. The trial court erred to the extent that it failed to hold that Whirlpool is entitled to summary judgment because no reasonable person could conclude that any Whirlpool supervisor had knowledge that the risk of injury to Youngbird as a result of his use of a prohibited cleaning procedure was substantially certain to occur.

"3. The trial court erred to the extent that it failed to hold that Whirlpool is entitled to summary judgment because no reasonable person could conclude that any Whirlpool supervisor, with knowledge that injury was substantially certain to occur, acted to require Youngbird to use the prohibited cleaning procedure."

■ Generally, an employee's only recourse for compensation due to on-the-job injury in Ohio is through the workers' compensation system. However, under the common law, an injured employee may elect to seek compensation directly from the employer for injury which has been intentionally inflicted by the employer. See *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572.

■■ To determine whether an employer has committed an intentional tort resulting in injury to an employee, a trier of fact must apply the three-part analysis set forth by the Ohio Supreme Court, most recently in *Fyffe v. Jeno's, Inc.* (1991), 59 Ohio St.3d 115, 570 N.E.2d 1108, demonstrating " * * * (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." *Id.* at paragraph one of the syllabus (explaining and modifying *VanFossen v. Babcock & Wilcox Co.* [1988], 36 Ohio St.3d 100, 522 N.E.2d 489, and noting court's prior adoption of Section 8[A] of the Restatement of the Law 2d, Torts).

The test makes it abundantly clear that the analysis of "intent" rests upon the employer's actual knowledge of, and its response to, the dangerous situation which resulted in the plaintiff/employee's injury. Whether injury was substantially certain to occur to an employee who improperly performed a dangerous procedure is generally an issue of fact. However, even if the plaintiff's injury was substantially certain to occur, that issue is moot if no reasonable trier of fact could find from the evidence presented that the employer had knowledge of such risk.

■ On a motion for summary judgment, if the court finds that there is no admissible evidence presented by the non-moving party which would create an

issue of material fact for trial, the court must grant the motion, provided that the movant is entitled to judgment as a matter of law, and that reasonable minds, construing the evidence submitted, can only conclude that the non-moving party has not supported his claims. Therefore, in order to overcome the motion for summary judgment in this case, Youngbird was required to set forth specific facts which show that there is a genuine issue as to whether appellee committed an intentional tort against him. *Fyffe v. Jeno's, Inc., supra*, at 119, 570 N.E.2d at 1112 (citing *Van Fossen v. Babcock & Wilcox Co., supra*); see *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph three of the syllabus. We must determine, guided by the court's three-pronged test in *Fyffe*, whether Youngbird has met that burden by reviewing the facts in the record presented by the parties, by way of affidavits and depositions, in support of and opposing the motion for summary judgment. See *Fyffe*, 59 Ohio St.3d at 119, 570 N.E.2d at 1113.

In *Fyffe*, the injured plaintiff was a sanitation worker who was compelled by his supervisor to work faster than normal, and to clean a conveyer system with which he was unfamiliar, due to a shortage of workers. In opposing the employer's motion for summary judgment, Fyffe presented evidence that he was told to clean the conveyer while it was running, and that the Plexiglas guard which prevented reaching into the machine had been removed by the maintenance supervisor to facilitate cleaning. The accident report of Fyffe's injury specifically referred to the "hazardous methods or procedures planned, condoned or directed by supervision," and the "unguarded equipment." The report further set forth suggestions as to how the equipment could be safely cleaned. Construing the facts "in favor of the non-moving party," Fyffe, the Supreme Court found that reasonable minds could differ as to whether an intentional tort had been committed by the employer against Fyffe, since it could reasonably be inferred from the evidence presented that the employer was aware of the hazardous nature of the cleaning procedure, having itself (through the actions of a supervisor) removed a safety guard simply "to make the cleaning easier" and to speed up production. *Fyffe*, 59 Ohio St.3d at 119–120, 570 N.E.2d at 1113.

We find that in this case, as in *Fyffe*, appellant was performing a hazardous cleaning procedure. However, the Supreme Court has held that exposure to hazardous or unusually dangerous conditions or processes is insufficient by itself to constitute a basis for bringing an intentional tort claim against an employer. In *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 539 N.E.2d 1114, the court emphasized that although " '[t]here are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved[,] * * * such conduct should not be classified as an

"intentional tort" and therefore an exception, under *Blankenship* or *Jones*, to the exclusivity of the [Workers' Compensation] Act.'" *Id.* at 172–173, 539 N.E.2d at 1117 (quoting *Van Fossen*, 36 Ohio St.3d at 117, 522 N.E.2d at 504–505).

 Therefore, in order to overcome appellee's motion for summary judgment, appellants must present the court with evidence that appellee caused Youngbird's injury to occur by requiring him to work under dangerous conditions, *knowing* that it was substantially certain that he would be harmed or injured thereby. See *Fyffe, supra,* paragraph one of the syllabus (setting forth the three-part test for determining employer intentional tort). It must be emphasized that this is *not* the "reasonable person" standard for determining negligence or recklessness; that is, the fact that the employer *should have known* it was requiring the employee to work under such dangerous conditions that he would certainly be injured is not enough to establish a case in intentional tort. Rather, the determination rests upon a claimant's alleging facts which show the employer's actual knowledge of the situation, even to survive a motion to dismiss on the pleadings. See, generally, *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 532 N.E.2d 753. Thus, there must be some competent evidence of the employer's knowledge, before a case can survive a motion for summary judgment and be permitted to go before a jury. See *Fyffe, supra,* 59 Ohio St.3d at 119–120, 570 N.E.2d at 1113.

 Proof of intent, while a subjective determination, may be inferred from the employer's conduct and the circumstances surrounding the injury. The "intent" which must be shown "'is not necessarily a hostile intent, or a desire to do any harm. Rather it is an intent to bring about a result which will invade the interests of another in a way the law forbids.'" *Jones v. VIP Development Co. supra,* 15 Ohio St.3d at 94, 15 OBR at 250, 472 N.E.2d at 1051 (quoting Prosser & Keeton, Law of Torts [5 Ed.1984] 36, Section 8). Intent, *in the context of intentional tort,* "'extends not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what the actor does.'" *Id.* at 94–95, 15 OBR at 250, 472 N.E.2d at 1051.

 A review of the record herein establishes that appellant has failed to offer sufficient proof showing that there is a genuine issue for trial. We find that Youngbird has presented no evidence sufficient to raise the issue of whether Whirlpool or its agents committed an intentional tort against him.

 It is evident from the record that Whirlpool was perhaps remiss in monitoring safety in the workplace, as shown by deposition testimony of Youngbird's former foreman and the former safety supervisor of the plant, both of whom appeared to have little or no knowledge of conditions regarding the "shear line" which Youngbird operated. The record is also clear that, at the time of

Youngbird's injury, Whirlpool had no formal policies or procedures concerning safety in cleaning the shear line rollers, aside from the general safety rule that *all* machinery should be turned off before cleaning. However, as noted by the Supreme Court on numerous occasions, proof of employer negligence, or even recklessness is not enough to establish commission of an intentional tort. Rather, an employer is treated as if he had intended to cause injury to an employee only when a reasonable person could infer from the surrounding circumstances that the employer, *with knowledge of a risk of certain injury from a dangerous condition, still requires an employee to perform the dangerous procedure.* See, *e.g., Fyffe, supra,* at paragraph two of the syllabus. Although there is no question that cleaning the rollers of the shearing machine is a dangerous procedure when performed in the imprudent manner employed by Joe Youngbird, the "dangerous condition" at issue must be one which falls outside the "natural hazards of employment," which one assumes have been taken into consideration by employers when promulgating safety regulations and procedures. *Brady v. Safety–Kleen Corp.* (1991), 61 Ohio St.3d 624, 631, 576 N.E.2d 722, 727 (citing *Blankenship v. Cincinnati Milacron Chemicals, Inc., supra*). We found, for example, that an unusually dangerous situation existed in *Courtad v. Whirlpool Corp.* (1989), 48 Ohio App.3d 200, 549 N.E.2d 566, where the employee/plaintiff was injured by a malfunctioning ninety-ton press. In *Courtad,* the employer had been informed several times that the press was dangerously "rolling over" and repeating its downstroke before the operator could move aside. The plaintiff further presented evidence that he was told to continue operating the press in its dangerous condition until his quota was met. *Id.* at 203, 549 N.E.2d at 569.

Next, although appellants have presented deposition testimony that other, similar accidents have occurred which should have alerted appellee that an existing dangerous condition was substantially certain to cause injury, the two "other accidents" were neither similar enough nor close enough in time to be relevant to the situation which existed at the time of Joe Youngbird's injury, or to alert appellee that Youngbird was substantially certain to be injured in some other way. Youngbird further testified by deposition that he had never complained to management that the cleaning procedure he used was unusually hazardous. There is thus no evidence on the record that appellee had "knowledge" that its employee was using a dangerous procedure which was substantially certain to cause him injury. *Fyffe, supra,* paragraph one of the syllabus.

Finally, by his own admission, Youngbird was never actually required by any supervisory personnel to clean the shearing machine rollers while they were moving, or to clean the moving rollers with his hand rather than the "tool" which

was provided by Whirlpool. In fact, the Whirlpool procedures manual specifically warned that all line machinery should be turned off before cleaning.

Based upon the foregoing discussion, we overrule appellants' assignment of error. Furthermore, we find appellee's cross-assignments well taken, and conclude that summary judgment was properly granted on the bases urged, *i.e.*, that appellants failed to submit evidence by which a reasonable jury could find that the *Fyffe* test was satisfied. Appellants presented no evidence that Youngbird's employer had knowledge of his use of a hazardous procedure which could result in his injury, nor did they present evidence that Youngbird had been required by the employer to engage in such hazardous procedure despite a substantially certain risk of injury. In fact, as we stated, *supra*, by Youngbird's own admission, he was never required by anyone in authority to thus endanger himself.

Therefore, having found no error prejudicial to the appellants herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment affirmed.*

THOMAS F. BRYANT and HADLEY, JJ., concur.