[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This appeal comes to us from a summary judgment issued by the Williams County Court of Common Pleas in an employer intentional tort case. Because we conclude that the trial court erroneously granted summary judgment to appellee, we reverse.
Appellants, Lora Jones, her husband, and children (hereafter referred to as "appellant"), brought an intentional tort suit against her employer, Bryan Canning Company, appellee/cross-appellant, (hereinafter "appellee") for injuries sustained on June 27, 1995, while appellant was performing a cleaning procedure on a "dry mix auger." Appellee answered and moved for summary judgment. The following facts are undisputed by the parties.
To clean the auger, appellant had been trained by her supervisor to roll seven towels together and feed them into the auger while it was moving. This procedure was repeated several times until the auger was clean. In order to be able to insert the rolled up towels, appellant was told to remove the cover on a "nip point," — an area usually enclosed because of its potential for injury to persons working around the auger. A warning label, which originally illustrated that the auger should not be engaged while the nip point cover was off, had been partially obliterated due to wear and tear and cleaning of the machine over the fifteen years of its operation at the plant. Appellant had previously performed the cleaning procedure without incident, although admitting that she tried to be very careful not to get her hands caught in the auger.
On the date of the incident, appellant began putting towels into the machine as usual, but the stickiness of the material being cleaned adhered to the towels and pulled appellant's hand and forearm into the auger. Although the auger moved slowly, appellant was unable to free herself. Appellant was then moved down the rotating tines of the auger for several seconds until her husband (who also worked on her shift), heard her screams and switched off the auger.
Appellant was eventually freed by paramedics and firemen after approximately one half hour. She sustained serious injuries to the tendons, muscles, and nerves in her hand and arm which required extensive treatment, including surgery and a muscle graft from her leg.
Depositions from appellee's management revealed that no emergency cut off switch was located near where appellant had to feed the towels into the machine. In addition, it was acknowledged that no one ever warned appellant about the potential for injury if she failed to keep her hands or arms out of the auger. Although the auger was cleaned on weekends by turning it off and dismantling it, the towel method was used during the week because it was faster. Management acknowledged that it never warned employees of the possibility of injury when using the towel cleaning method. Since no one had ever been injured during the fifteen-year-use of that process, no such warning was thought necessary. Management did admit, however, that one other employee had been injured in another auger. That employee's foot became accidentally caught when the auger activated because a lockout switch was not properly engaged prior to the employee's cleaning of the machine.
In response to appellee's summary judgment motion, appellant also filed an affidavit of an expert witness, Jerry M. Gillooly, formerly an OSHA inspector and director. Gillooly opined that after reviewing the evidence submitted thus far, it was his opinion that cleaning the running auger without the covers to the nip points was a process which was substantially certain to cause serious physical injury. The expert also offered his opinion as to whether this procedure violated any OSHA or Ohio Administrative Code safety rules. Also attached to appellant's response was a copy of a letter from OSHA to appellant's attorney regarding the outcome of its investigation of appellant's complaints of safety violations. Appellee moved to strike the affidavit and the letter as not meeting the requirements of Civ.R. 56. The trial court denied the motion to strike and admitted the documents.
Ultimately the trial court granted summary judgment to appellee. The court found that the fact that no previous injuries had occurred in the many years of previous operation "strongly suggests that injury from the procedure was not substantially likely to result from the manner in which the job was performed." The court also discounted appellant's expert witness as not raising factual issues which would defeat the motion for summary judgment.
Appellant now appeals that decision, setting forth the following two assignments of error:
"Assignment of Error No. 1
 "The trial court erred in granting summary judgment to defendant on the intentional tort claim against the employer when there was evidence that the employer required the employee as part of her job in cleaning a dry mix auger trough to remove the cover (guard) from the auger while it was moving and to push wadded cleaning cloth into the blades of the moving auger and to continue pushing until the wadded cloth reached the bottom of the auger trough and the employee's arm was caught and mangled by the auger while she was doing so.
"Assignment of Error No. 2
 "The trial court erred in determining that 1) the employer's violations of OSHA Regulations regarding guarding nip points were not probative of intentional tort, 2) that a prior injury on a connected vertical auger was not relevant and 3) that knowledge of hazard of an unguarded nip point could only be shown by a least one prior injury."
Appellee/cross appellant sets forth the following sole assignment of error:
 "The Trial Court Erred in Denying Appellee's Motion to Strike Exhibit 2 of Plaintiff's Memorandum Contra Defendant's Summary Judgment Motion and the Affidavit of Jerry M. Gillooly."
 I.
We will first address appellee/cross-appellant's assignment of error in which it argues that the trial court erred in denying its motion to strike certain documents submitted by appellant in opposition to appellee's motion for summary judgment.
The grant or denial of a motion to strike is within the sound discretion of the trial court. Weller v. Weller (1996),115 Ohio App.3d 173, 177. See, also, State ex rel Cassels v. DaytonCity Sch. Dist. Bd. of Edn. (1994), 69 Ohio St.3d 217, 223. Civ.R. 56(C) states that, upon a motion for summary judgment, the court may consider
 "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact."
Appellee first contends that the letter from the OSHA director to appellant's attorney should not have been admitted since it was not properly authenticated pursuant to Civ.R. 56. Generally, documents which are not properly authenticated are not admissible to support a motion for or response to summary judgment. Gen. Motors Acceptance Corp. v. Hollanshead (1995),105 Ohio App.3d 17, 20. However, failure to properly authenticate a document is not prejudicial where the opposing party does not suggest that the documents involved are not authentic or that the result would be different if the documents were properly authenticated. Internatl. Bhd. of Elec. Workers v. Smith (1992),76 Ohio App.3d 652, 660.
Here, the letter, a document from a public agency, was sent to appellant's attorney of record. Appellee's objection in the trial court to the letter was not based upon a lack of veracity or accuracy of the letter, but merely concerned the lack of authentication. Moreover, the trial court, in granting summary judgment to appellee, gave this evidence little, if any, weight. Therefore, while appellant's Exhibit 2 did not technically comply with the requirements of Civ.R. 56, we cannot say that the trial court abused its discretion in considering it.
Appellee also contends that the affidavit of appellant's expert witness should have been stricken because it was not relevant and was not based upon facts within the expert's own personal knowledge. Affidavits of expert witnesses may be submitted on summary judgment if they comport with the requirements of Civ.R. 56(E) and Ohio Rules of Evidence. SeeTomlinson v. Cincinnati (1983), 4 Ohio St.3d 66. For purposes of summary judgment, expert witnesses may submit affidavits outlining their opinions which are based upon their personal review of the file, pleadings and evidence admitted.Id.; Civ.R. 56(E). Under Evid.R. 705, an "expert may testify in terms of opinion or inference and give his reasons therefor after disclosure of the underlying facts or data." The admissibility of an expert's testimony is within the sound discretion of the trial court and is determined on a case-by-case basis. Alexander v. Mt.Carmel Med. Ctr. (1978), 56 Ohio St.2d 155, 157. Thus, such determinations will not be reversed on appeal absent an abuse of discretion. Id.; State v. Sage (1987), 31 Ohio St.3d 173.
In this case, Jerry M. Gillooly, appellant's expert witness, based his opinions on information which included appellant's deposition, depositions of appellee's management, appellee's answers to interrogatories and requests for documents, and photographs of the auger and its location. All these sources are properly considered pursuant to Civ.R. 56. After describing how augers function and referring to the specific relevant facts from the present case, Gillooly gives the gist of his opinion on the last page of his affidavit, when he states:
 "It is my opinion that, whether using a short stick, a long stick or bare hands, Lora Jones and other employees, while inserting towels into the turning screw conveyor of the Dry Mix Auger while it was running, were exposed to serious physical harm that was substantially certain to occur due to the frequency with which the Dry Mix Auger was cleaned (at least daily), the number of employees engaged in the cleaning (any one of a crew of five on a given day), the proximity of their approach to the nip points (mere inches), and their lack of training in lockout concepts. It was just a question of who would be injured an when."
In our view, Gillooly's affidavit speaks to the employer intentional tort issues as discussed later in appellant's assignments of error and set forth in Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115. Furthermore, contrary to appellee's contention, Gillooly's opinion is based upon his own personal review of the evidence in the case and was presented for the purposes of summary judgment, thus eliminating the purported prejudicial effect on a jury. Therefore, we cannot say that the trial court erred in denying appellee's motion to strike the expert's affidavit.
Accordingly, appellee's cross-assignment of error is not well-taken.
 II.
Appellant, in her first assignment of error, contests the trial court's grant of summary judgment in favor of appellee. An appellate court's review of a trial court's decision from a summary judgment is de novo. Maust v. Bank One Columbus, N.A.
(1992), 83 Ohio App.3d 103, 107. Civ.R. 56(C), states in pertinent part:
 "* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"
When considering a motion for summary judgment, a court must view the evidence and all inferences drawn therefrom in a light most favorable to the nonmoving party. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66.
To establish an intentional tort of an employer against an employee, a plaintiff must demonstrate:
 "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc.
(1991), 59 Ohio St.3d 115, paragraph one of the syllabus.[1]
Although subjectively determined, proof of intent may be inferred from the employer's actions and the circumstances surrounding the injury. Youngbird v. Whirlpool Corp. (1994),99 Ohio App.3d 740, 746. Within the context of an intentional tort, intent includes those consequences which are desired as well as those which will result in the unlawful invasion of another's interests. Jones v. VIP Development Co. (1984), 15 Ohio St.3d 90,94. An employer is treated as if he had intended to cause injury to the employee "only when a reasonable person could infer from the surrounding circumstances that the employer, with knowledge ofa risk of certain injury from a dangerous condition, stillrequires an employee to perform the dangerous procedure."Youngbird, supra, at 747, citing Fyffe, supra, at paragraph two of the syllabus.
In this case, it is undisputed that appellee knew of and required the use of the particular cleaning method utilized by its employees in cleaning the auger. This satisfies the third and part of the first prongs of Fyffe, supra. It is also undisputed that this process included the removal of a safety device, i.e.
the nip point cover, and the placing of hands and arms near unprotected nip points while the auger was moving — actions that were contrary to warnings originally placed on the machine. In our view, these actions satisfy the remainder of the requirements under Fyffe, supra, since, at the very least, an issue of fact is created as to whether or not the process was dangerous and whether or not harm was substantially likely to occur. See Taylor v.Triple A in the U.S.A. (1995), 107 Ohio App.3d 14 (an employer's deliberate removal of a safety guard from machinery may support a finding of intentional tort). Therefore, we conclude that since genuine issues of material fact remain in dispute, appellee is not entitled to judgment as a matter of law. Accordingly, appellant's first assignment of error is well-taken.
In light of our determination of appellant's first assignment of error, we consider appellant's second assignment of error to be moot.
The judgment of the Williams County Court of Common Pleas is reversed and remanded for proceedings consistent with this opinion. Court costs of this appeal are assessed to appellee.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ Peter M. Handwork, P.J.
JUDGE
 _____________________________ James R. Sherck, J.
JUDGE
CONCUR.
[1] We are aware that R.C. 2745 which now controls employer intentional tort actions and supersedes Fyffe v. Jeno's, Inc.,supra, was not in effect until November 1, 1995, and thus does not apply to appellant's claim.