**Thomas M. KLEPSKY, Plaintiff,**

v.

**DICK ENTERPRISES,
INC., Defendant.**

**No. 1:97 CV 2488.**

United States District Court,
N.D. Ohio,
Eastern Division.

March 8, 2000.

Robert E. Sweeney, Kevin E. McDermott, Law Offices of Robert E. Sweeney, Cleveland, OH, for plaintiff.

Daniel A. Ward, Jordan Kent Breslin, Jennifer K. Mathe, Thompson, Hine & Flory, Cleveland, OH, for defendants.

*MEMORANDUM OF OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

WELLS, District Judge.

This case is before the Court on a Report and Recommendation ("R & R") filed by United States Magistrate Judge Patricia A. Hemann regarding the Motion for Summary Judgment filed by Defendant Dick Enterprises, Inc. ("Dick Enterprises"). Dick Enterprises has moved for summary judgment on the basis that Plaintiff Thomas M. Klepsky cannot establish a prima facie case for an intentional workplace tort. Mr. Klepsky opposed the Motion.

Magistrate Judge Hemann concluded there was no genuine issue of fact and recommended that Dick Enterprises' Motion for Summary Judgment be granted. Mr. Klepsky filed objections to the R & R,

and Dick Enterprises responded to those objections.

This Court must "make a de novo determination of those portions of the R & R to which objection is made." 28 U.S.C. § 636(b)(1). The objections are treated in relation to issues delineated in Magistrate Judge Hemann's R & R. Because this Court finds there are genuine issues of fact, Dick Enterprises' Motion for Summary Judgment will be denied.

## I. FACTS

Mr. Klepsky, a journeyman carpenter, was employed by Dick Enterprises on a job involving the repair of the Veterans Memorial Bridge in Cleveland, Ohio. The repairs included replacing and re-pouring concrete in the bays underneath the bridge. (Def.Mot.S.J. [hereinafter "Doc. No. 21"], Ex. B at 20–21). To pour the concrete, steel pans were attached to the bridge by wooden planks which were in turn supported by metal brackets anchored to the bay itself. The concrete was then poured between the bridge and the pan. (Doc. No. 21, Ex. B at 22–23). After the concrete had set, Mr. Klepsky and a co-worker would typically strip the pans from the concrete so they could be reused. The pans were stripped by raising a man-lift just underneath the pan. Every second bracket was then removed and the remaining brackets were loosened so the wooden planks could be removed. (Doc. No. 21, Ex. B at 24). A crow bar or chipping hammer would be used to pry the pan from the concrete. When the pan came loose it would fall or be lifted onto the rails of the man-lift. (Doc. No. 21, Ex. B at 24–26, 28).

On 5 September 1995, Mr. Klepsky and co-workers Chris Mohrman and Victor Burda were stripping pans with a chipping hammer. (Doc. No. 21, Ex. B at 28). When they got to the last pan, the men decided to remove *all* the brackets and wooden planks. (Doc. No. 21, Ex. B at

30). While the pan was hanging on the concrete without support, Mr. Klepsky went to get the chipping hammer and discovered it had been taken by another employee. (Doc. No. 21, Ex. B at 28–30). Mr. Burda was sent to locate the hammer. While Mr. Klepsky and Mr. Mohrman were waiting, Dick Enterprises' general foreman, Desi Trabucco, came over and asked why they were standing around. (Doc. No. 21, Exs. B at 30, C at 33). Mr. Klepsky explained they were waiting for the return of the chipping hammer to continue stripping the pans. At this point, Mr. Klepsky heard Mr. Mohrman suggest to the general foreman, "maybe we can wrap a strap around it and use the man-lift to pull it down." (Doc. No. 21, Ex. B at 31). Mr. Klepsky claims he interrupted and said, "I don't want to do that ... if that pan takes off, it will take off ... one of our [expletive omitted] heads." (Doc. No. 21, Ex. B at 31). Mr. Klepsky says the general foreman directed him to, "Try it anyhow."[1] (Doc. No. 21, Ex. C at 11). Even though Mr. Klepsky did not want to pull the pan off the concrete using the man-lift, he testified he agreed to it because he was afraid of losing his job. Two or three times in the past, Mr. Trabucco had told him, "if you don't want to work, you can just go to the trailer and get your check." (Doc. No. 21, Ex. C at 28). Mr. Trabucco admits he knew the men were going to use a strap to pull off the pan. However, he denies knowing the men were going to attach the strap to the man-lift, denies Mr. Klepsky said he did not want to pull the pan off the concrete, and denies he directed the men to continue. (Doc. No. 21, Exs. B at 37, C at 11, 30).

While Mr. Trabucco was still there, Mr. Mohrman took a short strap and wrapped one end around the pan. When he saw the strap was too short, Mr. Trabucco gave Mr. Mohrman a longer strap and said, "whatever you do, don't get near the pan." (Doc. No. 21, Exs. B at 31–32, A at 11, 15).

---

1. Mr. Klepsky's statement varies slightly in other testimony. Later in the workers' compensation hearing he says Mr. Trabucco told him, "Well, go ahead and give it a try, just

don't get by it." (Doc. No. 21, Ex. C at 56). During his deposition, Mr. Klepsky said the general foreman told him, "Go ahead and do it." (Doc. No. 21, Ex. B at 31).

Mr. Trabucco then left the area and went to the construction trailer. Mr. Mohrman wrapped one end of the longer strap around the pan and the other end around the top of the man-lift. Both Mr. Mohrman and Mr. Klepsky got into the man-lift and lowered it until the tension on the strap lifted the front wheels of the man-lift off the ground. (Doc. No. 21, Ex. B at 33–34). Mr. Mohrman raised the platform of the man-lift so the wheels dropped back to the ground, but there was still tension on the strap. (Doc. No. 21, Ex. B at 35). Mr. Klepsky picked up a 20–pound sledge hammer and began hitting the pan to knock it loose from the concrete. (Doc. No. 21, Ex. B at 34). When Mr. Mohrman said the pan was coming loose, Mr. Klepsky backed up four or five feet and moved to the center of the man-lift. (Doc. No. 21, Ex. B at 34–35). The pan came off the concrete "like a rocket" and hit Mr. Klepsky's left hand almost severing a finger. (Doc. No. 21, Ex. B at 35).[2]

## II. SUMMARY JUDGMENT

Summary judgment is appropriate if the evidence in the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The Supreme Court has further explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the nonmoving party has the burden of proof in a case, the initial burden on the moving party under Rule 56 "may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1087 (6th Cir.1996).

"When a motion for summary judgment is made and supported as provided in [Rule 56], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The "mere existence of a scintilla of evidence in support of the [nonmovant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the evidence must be viewed in the light most favorable to the party opposing the motion, *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, "conclusory allegations standing alone will not defeat a properly supported motion for summary judgment." *White v. York Int'l Corp.,* 45 F.3d 357, 363 (10th Cir.1995).

## III. LAW & ANALYSIS

### A. *Standard*

█ In 1991, the Ohio Supreme Court summarized and clarified Ohio law on in-

---

**2.** In response to Dick Enterprises' Motion, Mr. Klepsky argues using the man-lift as a crane violated the manufacturer's safety manual and Dick Enterprises' safety rules. However, Mr. Klepsky never establishes the man-lift was manufactured by one of those companies whose safety manuals are produced as evidence and does not show the instructions were known to Mr. Trabucco or otherwise to

Dick Enterprises. (R & R at 3–4). Mr. Klepsky offers an expert's affidavit about the violation of the safety rules and how the accident happened. However, such information is not relevant to this Motion because all of the prima facie elements hinge on what Dick Enterprises actually knew as opposed to what it should have known.

tentional tort claims brought by an employee against an employer. *Fyffe v. Jeno's, Inc.*, 59 Ohio St.3d 115, 570 N.E.2d 1108 (1991). Adopting Restatement (Second) of Torts § 8(A), the court concluded an employee must demonstrate the following to show the requisite "intent" on the part of the employer:

> (1) *knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;*
>
> (2) *knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and*
>
> (3) *that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.*

*Id.* at 1112. Proof of an intentional tort requires proof beyond negligence or recklessness:

> *Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent.*

*Id.* at 1110. The employee at all times has the burden of demonstrating the employer had knowledge amounting to a substantial certainty the injury would occur. *See Pariseau v. Wedge Prods., Inc.*, 36 Ohio St.3d 124, 522 N.E.2d 511, 516 (1988). However, "whether injury was substantially certain to occur to an employee who improperly

performed a dangerous procedure is generally an issue of fact." *Youngbird v. Whirlpool Corp.*, 99 Ohio App.3d 740, 651 N.E.2d 1314, 1317 (1994). As stated in *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 522 N.E.2d 489, 504 (1988):

> *There are many acts within the business or manufacturing process which involve the existence of dangers, where management fails to take corrective action, institute safety measures, or properly warn the employees of the risks involved. Such conduct may be characterized as gross negligence or wantonness on the part of the employer. However, in view of the overall purposes of our Workers' Compensation Act, such conduct should not be classified as an "intentional tort" and therefore an exception . . . to the Act.*

Thus, under the common law standard the question on summary judgment is as follows: "Weighing the evidence and inferences favorable to [plaintiff], [is] there reliable, probative evidence to show that [Defendant] intentionally proceeded despite a known threat of harm to others which was substantially certain to occur?" *Kunkler v. Goodyear Tire & Rubber Co.*, 36 Ohio St.3d 135, 522 N.E.2d 477 (1988).

In 1993, the Ohio Legislature passed O.R.C. § 2745.01 which, effective 20 October 1993, changed the standard of proof for intentional torts in the workplace. Under the common law, courts had applied a "preponderance of the evidence" standard. *Pariseau v. Wedge Products, Inc.*, 36 Ohio St.3d 124, 522 N.E.2d 511, 516 (1988). However, O.R.C. § 2745.01 changed the standard and required an employee to prove the prima facie elements of the tort by "clear and convincing" evidence. 1993 Ohio Legis.Serv., H107 § 2745.01 (Banks–Baldwin). In 1995, the Ohio Legislature repealed O.R.C. § 2745.01 and on the same day replaced it with an identical statute, effective 1 November 1995.1995 Ohio Legis. Serv., H103 § 2745.01 (Banks–Baldwin).

In 1999, the Supreme Court of Ohio ruled § 2745.01 unconstitutional in its entirety and specifically invalidated its "clear and convincing" standard of proof. *Johnson v. BP Chemicals, Inc.*, 85 Ohio St.3d 298, 707 N.E.2d 1107, 1114–15 (1999).[3] Because there was no other applicable statute, the Ohio Supreme Court reverted to the previous common law test and standard of proof set forth in *Fyffe. Id.* at 1115. (holding plaintiff's common law intentional tort claim is reinstated). Accordingly, in the instant case Mr. Klepsky must "demonstrate by a preponderance of the evidence that [Dick Enterprises] or [its] agent manifested an intent to injure [Mr. Klepsky] and this intent include[d] the knowledge and expectation that such an injury [was] substantially certain to occur." *Pariseau*, 522 N.E.2d at 516.

### B. *Analysis*

■ Dick Enterprises alleges summary judgment is appropriate because no genuine issues of fact remain. In his objections, however, Mr. Klepsky contends there remain genuine issues of fact which directly concern the three prima facie elements of the intentional workplace tort alleged here: 1) Dick Enterprises' knowledge of the procedure being used; 2) Dick Enterprises' substantial certainty the procedure would cause injury; and that 3) Dick Enterprises required the men to remove the pan by attaching it to the man-lift.

First, Dick Enterprises claims its general foreman, Mr. Trabucco, did not know how the men intended to remove the pan from the concrete. (Doc. No. 21 at 10; R & R at 8). This claim is directly contradicted by the testimony of Mr. Mohrman who asserts it was *Mr. Trabucco's* idea to use the man-lift to pull the pan off the concrete. Specifically, Mr. Mohrman testifies:

Q: *What did Desi [Trabucco] say?*

A: *He wanted to know if we could pull it out any way, if we could finish that bay up and keep going.*

Q: *And what was said next?*

A: *Exactly I don't know. It was brought up so that if we used the lift to pull the pan down, to pull it out.*

Q: *Whose idea was that?*

A: *Desi's.*

(Pl.Obj. [hereinafter "Doc. No. 35"] at 3; Pl. Exhibits [hereinafter "Doc. No. 36"], Ex. A at 12). Dick Enterprises has also claimed Mr. Trabucco did not know the exact way in which the men were removing the pan because he did not know they had removed all the support brackets. (R & R at 7–8). Presumably, the significance of this fact is that because Mr. Trabucco believed the brackets were in place, he thought the pan would be restrained when it was pulled off the concrete. However, Mr. Trabucco's alleged lack of knowledge is utterly unsupported by affidavit or deposition testimony. Moreover, when Mr. Trabucco approached the men he was standing close to the pan, raising a reasonable inference that the lack of brackets would have been clearly visible to him. (Doc. No. 35 at 7).

Next, Dick Enterprises claims Mr. Trabucco was not substantially certain that the way in which the men were removing the pan from the concrete would cause injury because pans previously had been taken off and dropped into the lift without injury. Therefore, Dick Enterprises claims there was no way Mr. Trabucco would have known that on this occasion injury would occur. (Doc. No. 21 at 13–14; R & R at 8). However, as Mr. Klepsky's objections point out, this argument rests on the incorrect assumption that the pan at issue was removed in the same way as pans in the past. (Doc. No. 35 at 8).

---

**3.** The Ohio Supreme Court held O.R.C. § 2745.01 was unconstitutional because it violated equal protection of the law and it imposed an "excessive standard (deliberate and intentional act), with a heightened burden of proof (clear and convincing evidence), [and was] clearly not a law that furthered the *** comfort, health, safety and general welfare of all employees." *Johnson*, at 1114.

Here, unlike the usual practice, the men removed *all* the brackets around the pan. (Doc. No. 21 at 3; Doc. No. 21, Ex. B at 23–25, 30). Moreover, this time they were not prying the pan from the concrete, but were instead forcefully pulling it toward them with a man-lift.

Mr. Klepsky alleges that his own warning and the contrary direction of Mr. Trabucco raise ·an issue of fact concerning Dick Enterprises' substantial certainty of injury. According to his testimony, Mr. Klepsky notified Mr. Trabucco of the substantial certainty of danger when he warned:

> *Well, I told, I interrupted then. I said, I don't want to do that. I said, if that pan takes off, excuse my language, it will take one of our [expletive omitted] heads off.*

(Doc. No. 21, Ex. B at 31). Arguably this statement made Mr. Trabucco aware there was a substantial certainty of injury. Further evidence of Mr. Trabucco's knowledge that there was a substantial certainty of injury is found in his own alleged direction when he stated, "Well, go ahead and give it a try, *just don't get by it.*" Interpreting this statement, as we must, in a way most favorable to Mr. Klepsky, a reasonable implication is that Mr. Trabucco did know that anyone who got close to the pan would be injured.

Finally, Dick Enterprises claims Mr. Trabucco did not require the men to use the man-lift in removing the pan from the concrete. (Doc. No. 21 at 17). However, Mr. Trabucco's own statement raises a question of fact as to whether he required the men to use the man-lift to remove the pan. When Mr. Klepsky objected to pulling the pan off the concrete with the man-lift, Mr. Trabucco stated, "Try it anyhow." He then handed the men a longer strap to assist them in their efforts. (Doc. No. 35 at 4, 8).

Viewing the above evidence in the light most favorable to Mr. Klepsky, several issues of material fact remain which directly concern the requisite prima facie elements here. Consequently, Dick Enterprises' Motion for Summary Judgment is denied.

IT IS SO ORDERED.