DECISION AND JUDGMENT ENTRY
This appeal comes to us from a summary judgment issued by the Williams County Court of Common Pleas in an intentional tort action against an employer. Because we conclude that summary judgment was properly granted in favor of appellee, we affirm.
Appellant, Edith Smith, is the executrix on behalf of her deceased husband Rick Smith ("Smith"). In September 1999, Edith filed suit against appellee, Stark Truss Company ("Stark"), alleging an employer intentional tort. The suit stemmed from an incident in which a forklift driver removed a group of thirty-two feet sized, unbanded roof trusses[1]
from a "stacker" and leaned them against a pole in an attempt to straighten them. When Smith walked between the forklift and the trusses, the trusses toppled over on him, causing his death. During discovery, various Stark employees and supervisors were deposed regarding the company's safety procedures and rules concerning the banding and storage of trusses. No written rules existed regarding the handling of unbanded trusses. All employees acknowledged that there was an unwritten rule that trusses were to be banded before removal from the stackers. No documentation of any prior injuries from falling trusses was presented.
Appellee moved for summary judgment, asserting that appellant had not provided sufficient evidence to support an employer intentional tort claim. Following the filing of appellant's memorandum in opposition and oral arguments, the trial court granted summary judgment in favor of appellee.
Appellant now appeals that judgment, setting forth the following sole assignment of error:
 "The Trial Court erred in granting the motion for summary judgment of Defendant Stark Truss Company."
The standard of review of a grant or denial of summary judgment is the same for both a trial court and an appellate court. Lorain Natl. Bankv. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted if "the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of facts, if any, * * * show that there is no genuine issue as to any material fact" and, "construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." Civ.R. 56(C).
In an action for intentional tort against an employer, a plaintiff must show that:
 "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffe v. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
In order to meet the Fyffe test, a court must determine whether an employer had actual knowledge of the existence of a dangerous process, procedure, instrumentality, or condition. Fultz v. Baja Boats, Inc. (Feb. 18, 1994), Crawford App. No. 3-93-10, unreported. This standard "is not the `reasonable person' standard for determining negligence or recklessness; that is, the fact that the employer should have known it was requiring the employee to work under such dangerous conditions that he would certainly be injured is not enough to establish a case in intentional tort. Rather the determination rests upon a claimant's alleging facts which show the employer's actual knowledge of the situation. See, generally, Mitchell v. Lawson Milk Co. (1988),40 Ohio St.3d 190." Id.
Even if an injury is foreseeable and probable to occur if the danger occurs enough times, "there is a difference between probability and substantial certainty. The mere knowledge and appreciation of a risk-something short of substantial certainty-is not intent. Unless the employer actually intends to produce the harmful result or knows that injury to its employee is certain or substantially certain to result from the dangerous instrumentality or condition, the employer cannot be held liable." Arrigo-Klacik v. Germania Singing Sports Soc. (Aug. 30, 2001), Franklin App. No. 00AP-1397, unreported.
An employer is considered to have intended to cause injury to an employee "only when a reasonable person could infer from the surrounding circumstances that the employer, with knowledge of a risk of certaininjury from a dangerous condition, still requires an employee to performthe dangerous procedure." (Emphasis in the original.) Youngbird v.Whirlpool Corp. (1994), 99 Ohio App.3d 740, 747, citing e.g., Fyffe,supra, at paragraph two of the syllabus.
In this case, we agree that placing the unbanded trusses in a vertical position was a potentially dangerous maneuver. Nevertheless, nothing in the record demonstrated that harm would be substantially certain to occur by using this procedure. Although one worker may have occasionally employed the practice of taking unbanded trusses from the stacker to straighten them, there is nothing in the record to indicate that the employer required any workers to do this or even sanctioned such action. In fact, as far back as the late 1980's, the unwritten but known rule was that workers were not to remove unbanded trusses from the stacker.
In addition, the testimony of Stephen Bruot, the forklift driver, demonstrates that Rick Smith placed himself between the forklift and the trusses which were being straightened. At that point Smith, an over-the-road truck driver, was not engaged in any activity required or sanctioned by the employer.
Therefore, we conclude that material issues of fact are not in dispute and appellee was entitled to judgment as a matter of law. Accordingly, appellant's sole assignment of error is not well-taken.
The judgment of the Williams County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Melvin L. Resnick, J., James R. Sherck, J., and Mark L. Pietrykowski,P.J., CONCUR.
[1] Roof trusses are triangular forms constructed of boards held together at the corners by metal plates. At the end of the manufacturing process, the trusses are placed on a "stacker." The metal plates sometimes cause the trusses to mis-align and the worker has to use various tools to try to straighten them for banding. Once banded, the trusses are then lifted off by the forklift driver and taken to another location for storage.