OPINION
{¶ 1} Appellants, John ("John") and Debbie Wetmore, appeal from the April 5, 2002 judgment entry of the Lake County Court of Common Pleas, in which the trial court granted the motion for summary judgment of appellee, American Guard Co., Inc.
 {¶ 2} Appellants filed a complaint against appellee on May 8, 2001. While John was working for appellee as a press operator, he suffered injuries to his right hand, which consisted of three crushed fingers. On February 1, 2002, appellee filed a motion for summary judgment, and appellants filed a brief in opposition on February 20, 2002.
 {¶ 3} The following facts are relevant to a determination of this appeal. On August 16, 2000, John, an employee of appellee, was operating a machine called a lip spinner, which manufactures metal guards for hand held grinders. In his deposition, John stated he was hired by appellee in 1994, and was trained on how to run the lip spinning machine. The machine was equipped with a light curtain safety device as a result of a 1989 injury sustained by a former employee of appellee. John had run the lip spinner the majority of the time he was at work. He mentioned that he had never been injured on the lip spinner prior to the injury which is the subject of the instant action; nor was he aware of anyone else being injured since he began his employ.
 {¶ 4} Furthermore, in his deposition John agreed that safety was very important to Mr. Jerome A. Leeds ("Leeds"), the president of appellee, and Mr. James L. Paul ("Paul"), the vice president of appellee. He acknowledged that during his employment with appellee, he attended many safety meetings. Leeds stated that there were regular safety meetings. The meetings addressed things like safe procedures and safety concerns, such as hand safety, eye safety, power forklift training, machine guards and safety devices. He learned that you should "keep your hands out of the machine." John had also received a safety manual from appellee upon his hire.
 {¶ 5} John stated that he was encouraged by his supervisor, Robert Worrell ("Worrell"), not to go to Leeds or Paul to report any problems he was having, but Worrell maintained that he never told John "not to bother [Leeds] or [Paul] with any maintenance issues." John admitted that he knew Leeds had an open door policy and was at the company on a daily basis. In addition, he indicated that he did not need Worrell's permission to go see Leeds. In fact, John was comfortable enough going to Leeds for a loan. John testified that during the time he was working at appellee, he suggested to Leeds that a shield be placed on a spot welder, and Leeds agreed.
 {¶ 6} John stated that most of the time he was at work Worrell instructed him to work on the lip spinner machine. However, John claimed that he refused to do so because it was a dangerous machine, and he was told "either run it, or go home." Yet, John admitted that he never went to Leeds or Paul and voiced his concerns. He further averred that he fears any machine.
 {¶ 7} In an entry dated April 5, 2002, the trial court granted appellee's motion for summary judgment. It is from that entry that appellants timely filed the instant appeal and now assign the following as error:
 {¶ 8} "The trial court erred, as a matter of law, in granting [appellee's] motion for summary judgment[.]"
 {¶ 9} Under their sole assignment of error, appellants argue that the trial court erred in granting the motion for summary judgment of appellee.
 {¶ 10} Summary judgment may be granted where there are no genuine issues as to any material fact, the moving party is entitled to judgment as a matter of law, and it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Mootispawv. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 11} Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "*** we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 12} In general, an employee is compensated for work-related injuries through the workers' compensation system; however, if an employer intentionally inflicts the injury, the employee may seek damages directly from the employer. Youngbird v. Whirlpool Corp. (1994),99 Ohio App.3d 740, 744. An employer has committed an intentional tort against an employee if all of the following can be shown: "(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task." Fyffev. Jeno's, Inc. (1991), 59 Ohio St.3d 115, paragraph one of the syllabus.
 {¶ 13} To establish an intentional tort by an employer, proof beyond that required to establish negligence or recklessness is required:
 {¶ 14} "Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure, or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the results. However, the mere knowledge and appreciation of a risk — something short of substantial certainty — is not intent." Id. at 118.
 {¶ 15} In the case at bar, the trial court granted appellee's motion for summary judgment because it concluded that appellants failed to establish the elements of the Fyffe test. However, in their appellate brief, appellants contend that they met all three prongs of the Fyffe
test.
 {¶ 16} Initially, we would note that the deposition testimony of Worrell, Leeds, and Paul are evidence that John was trained in the proper safety techniques appropriate for his job. Appellants have offered no evidence that, if John had followed the procedures set forth by appellee, there would have been a substantial certainty of him being injured while operating the lip spinning machine. Further, there was no evidence that any other employee of appellee had been injured while operating the lip spinner since 1989. There was also no evidence presented that appellee knew of the existence of a dangerous condition or process within the business. Therefore, the first prong of the Fyffe test is not met.
 {¶ 17} Moreover, as a result of the 1989 injury, a light curtain safety device was installed on the lip spinner, and since the installation of that device, there had been no injuries. In addition, there was no evidence that appellee discouraged John from following the recommended safety procedures. The lip spinner was tested after John's injury, and all of the controls and safety systems were fully functional. There was also no proof that anyone could insert their hands quick enough through the light curtain to injure themselves because tripping the light curtain stopped the machine within one to two seconds.
 {¶ 18} In Fyffe, 59 Ohio St.3d at 120, the plaintiff was injured while cleaning a moving conveyor belt. The plaintiff stated that he had been trained to clean the conveyor belt while the belt was running. Id. Further, a Plexiglas safety guard had been removed to expedite the cleaning. Id. The implication of the plaintiff's statements in Fyffe was that he was engaged in a dangerous practice that involved skirting safety measures, and this practice was sanctioned by his supervisor.
 {¶ 19} In the case sub judice, there was no evidence presented to indicate that appellee was aware of a dangerous condition, other than the dangers encountered whenever an employee works with any type of machinery. There was no suggestion that the lip spinner was defective in any way; nor was there any implication that appellee attempted to circumvent appropriate safety procedures or encouraged its employees to do so. Further, John had been trained on the lip spinning machine and had been given a safety handbook. Thus, we agree with the trial court that appellants failed to meet the second prong of the Fyffe test.
 {¶ 20} The third prong of the Fyffe test requires that the employer have knowledge of the dangerous condition, but nevertheless insist on the employee performing the task. There is nothing in the record to suggest that John, Worrell, Leeds, Paul, or any other representative of appellee viewed operating the lip spinner as an inherently dangerous task. Appellants have not identified any defects in the lip spinner that led to John's injury, nor have appellants confirmed any other accidents that occurred in the course of operating the lip spinner. Further, even though John stated that he did not want to use the lip spinner because it was a dangerous machine, he never claimed that he did not want to operate it because it was malfunctioning or not operating correctly. Moreover, on the day of the accident, John did not refuse to work on the lip spinner.
 {¶ 21} John also acknowledged that Leeds had an open door policy with employees, and that when John suggested installing a shield on a spot welder, Leeds agreed. Additionally, even though John used the lip spinner most of the time, both he and Worrell stated that other employees had also operated it. There were no complaints by other employees who operated the lip spinner. In light of these facts, we agree with the trial court that appellants failed to meet the third prong of the Fyffe test. Hence, after construing the evidence most strongly in favor of appellants, reasonable minds can come to but one conclusion, and that conclusion is adverse to appellants.
 {¶ 22} For the foregoing reasons, appellants' assignment of error is not well-taken because the trial court properly granted appellee's motion for summary judgment. The judgment of the Lake County Court of Common Pleas is affirmed.
JUDITH A. CHRISTLEY and DIANE V. GRENDELL, JJ., concur.